COMMAND HELICOPTERS, INC., an Illinois corporation, Plaintiff,

v.

The CITY OF CHICAGO, a municipal corporation, Defendant.

No. 88 C 3480.

United States District Court, N.D. Illinois, E.D.

July 20, 1988.

Robert E. Senechalle, Jr., Senechalle & Murphy, P.C., Arlington Heights, Ill., for plaintiff.

Frederick S. Rhine, Judson H. Miner, Corp. Counsel of the City of Chicago, Chicago, Ill., for defendant.

MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on the motion of plaintiff Command Helicopters, Inc. ("Command") for summary judgment on Count I of its complaint. For the following reasons, the motion is granted.

Command is an Illinois corporation which is in the business of performing external-load lifting operations by helicopter. Command uses single-engine helicopters in its lifting operations, and states that its aircraft and pilots have been certified for such operations by the Federal Aviation Administration ("FAA").

Command is before this Court seeking to have a municipal ordinance ("the Ordinance") of the defendant City of Chicago ("the City") declared unconstitutional. The Ordinance, which became effective on January 27, 1988, states:

> 37–30 No person shall operate a helicopter that is being used for raising, lowering or otherwise moving any external object unless the helicopter has 2 operating power sections driving the roters turning about the vertical axis.

> 37–31 Any person violating Section 37–30 shall be fined not less than Five Hundred Dollars ($500.00) nor more than One Thousand Dollars ($1,000.00) for each offense and each day such violations shall continue shall be regarded as a separate offense.

Command contends that the Ordinance violates the Supremacy Clause of Article VI of the United States Constitution, because the FAA's power to regulate in the area of air commerce effectively pre-empts local regulations of the type here at issue.

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits, and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* 106 S.Ct. at 2511. Summary judgment may be granted if the evidence merely is colorable or is not significantly probative. *Id.*

When a properly supported motion for summary judgment has been made, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* The opposing party is entitled to the benefit of all favorable inferences which reasonably can be drawn from the underlying facts; however, only *reasonable* inferences will be drawn, not every conceivable inference. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987).

The Court finds that there are no genuine issues of material fact present in this case, and therefore that summary judgment may properly lie.

The United States Supreme Court has stated:

It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to," federal law. . . . Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. . . . In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for suplementary state regulation. . . . Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." . . . Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," . . . or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," . . . .

We have held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes. . . . Also, for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws. . . .

*Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 712–13, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

A presumption exists favoring state or local regulation of safety matters. *Id.*, 471 U.S. at 715, 105 S.Ct. at 2376. "Where . . . the field that Congress is said to have pre-empted has been traditionally occupied by the States 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Command must overcome this presumption if the Ordinance is to be declared unconstitutional. The parties apparently agree that Congress has not explicitly stated that it has pre-empted state and local regulation of helicopter external-load lifting operations. Command instead argues that Congress implicitly has pre-empted the field through the Federal Aviation Act of 1958 and the Congressional mandate to the FAA to prescribe a comprehensive set of aircraft and air traffic rules and regulations.

The City contends that Congress has not pre-empted, explicitly or implicitly, local regulation of helicopter external load operations like the ones involved here. The City also notes its strong interest in ensuring the safety of its residents, and argues that the Ordinance is designed to protect that interest. The City cites *Aircraft Owners & Pilots Association v. Port Authority of New York*, 305 F.Supp. 93 (E.D. N.Y.1969), as support for its argument against pre-emption.

While Congress has not expressly stated that state and local air safety regulations are pre-empted by the Congressionally-authorized federal regulations, the Court finds that the comprehensiveness of the federal scheme, along with the need for uniformity, warrant the inference that it intended such pre-emption.

In *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), Justice Douglas, writing for the Court, discussed the Federal Aviation Act of 1958 ("the Act") and the pre-emption doctrine. Although *City of Burbank* arose in the context of local noise regulations rather than an helicopter engine ordinance, the case is instructive nonetheless since a "police powers" argument of the type advanced in the present case was used by the City of Burbank in attempting to justify its ordinance.

The Court in *City of Burbank* rejected Burbank's argument that the Act did not pre-empt its inherent police powers in the area of health and safety regulations, in this case Burbank's aircraft noise abatement ordinance. The Court first noted that § 1108(a) of the Act, 49 U.S.C.App. § 1508(a), states: "The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States ..." *Id.*, 411 U.S. at 627–28, 93 S.Ct. at 1856. The Court also pointed out that by § 307(a), (c), 49 U.S.C.App. § 1348(a), (c), Congress gave the FAA "broad authority to regulate the use of the navigable airspace, 'in order to insure the safety of aircraft and the efficient utilization of such airspace ...' and 'for the protection of persons and property on the ground....'" *Id.*, 411 U.S. at 627, 93 S.Ct. at 1856.

The Court agreed with the parties that pre-emption exists with respect to "airspace management." *Id.* It also noted that the Act "requires a delicate balance between safety and efficiency, 49 U.S.C.[App.] § 1348(a), and the protection of persons on the ground. 49 U.S.C.[App.] § 1348(c). ... The interdependence of these factors requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." *Id.*, 411 U.S. 638–39, 93 S.Ct. 1862.

Justice Rehnquist, writing in dissent, also recognized that "[t]he paramount substantive concerns of Congress were to regulate federally all aspects of air safety ... and, once aircraft were in 'flight,' airspace management.... Congress clearly intended to pre-empt the States from regulating aircraft in flight...." *Id.*, 411 U.S. at 644, 93 S.Ct. at 1865 (Rehnquist, J., dissenting).

In addition to the guidance that can be taken from *City of Burbank*, the comprehensiveness of the Act and the federal regulations lead to the conclusion that the Ordinance is pre-empted. At the direction of Congress, the FAA has prescribed rules, regulations and standards for the certification and operation of various types of aircraft. Part 133 of the Code of Federal Regulations (CFR) is entitled "Rotorcraft External–Load Operations," and sets out specific standards for equipment and personnel used in helicopter lifting operations. Section 133.1 provides:

Applicability.

This part prescribes—

(a) Airworthiness certification rules for rotorcraft used in; and

(b) Operating and certification rules governing the conduct of rotorcraft external-load operations in the United States by any person.

Sections 133.1 et seq. provide detailed certification and operating requirements with which any and all persons (with limited exceptions not applicable here) must comply before conducting rotorcraft external-load operations. Even after being certified, § 133.33(c) provides that operators may conduct external-load lifting operations only after complying with several further requirements, including the garnering of approval by the local FAA office of a detailed plan of operations and the reaching of an agreement with the "local political subdivision" regarding details of the operation. 14 C.F.R. Ch. 1, §§ 133.33(d)(1), (2).

These requirements, when read in conjunction with the Act, provide a comprehen-

sive and balanced scheme of federal regulation of aviation, and specifically of rotorcraft external-load lifting operations. Congressional intent to pre-empt local rules regarding such operations can easily be inferred.

Furthermore, on a policy level, if each locality in the nation was allowed to set its own different requirements for aircraft operating within its limits, there would be a substantial negative effect on commerce. The need for nationwide uniformity is clear. In pursuit of this uniformity, Congress clearly has delegated to the FAA the duty to protect both persons and property on the ground, as well as to insure the safety of aircraft in the air. *See* 49 U.S.C. App. § 1348(a), (c). The City's argument that the Ordinance is permissible because it "complements" the existing federal legislation therefore is unpersuasive.

Also unpersuasive is the City's citation to *Aircraft Owners & Pilots Association v. Port Authority of New York*, 305 F.Supp. 93 (E.D.N.Y.1969). In addition to pre-dating the decision of the United States Supreme Court in *Burbank, Aircraft Owners* did not involve a police powers argument at all; rather, it involved the right of the owner of an airport to regulate use of that airport. *Aircraft Owners* therefore is inapposite here.

### CONCLUSION

Although Congress has not explicitly stated that the Federal Aviation Act, and the rules and regulations prescribed pursuant thereto by the FAA, were intended to pre-empt local regulation of helicopter external-loading operations, and although pre-emption is not to be inferred lightly, the Court finds: (1) that the federal legislation in this field is "sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation"; and (2) that the Ordinance "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in that it defeats the objective of prescribing uniform national standards for aircraft and air safety. *See International Paper Co. v. Ouellette*, 479 U.S. 481, ——, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987); *Hillsborough County*, 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985).

Accordingly, Command's motion for summary judgment on Count I of its complaint is granted.*

* Because Count II is rendered moot as an alternative ground of relief in light of the summary judgment granted on Count I, the Court, on its own motion, dismisses Count II.