**Robert GUSTAFSON, Plaintiff,**

v.

**CITY OF LAKE ANGELUS, Donald Althoff, and Michael Stefani, Defendants.**

Civ. A. No. 92–73976.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 22, 1993.

---

Steven M. Chait, Sullivan, Ward, Southfield, MI, for plaintiff.

James L. Howlett, Beier Howlett, Bloomfield Hills, MI, for defendants.

*MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT AND A PERMANENT INJUNCTION, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECTION 1983 CLAIMS*

GADOLA, District Judge.

Plaintiff Robert Gustafson brings this action against defendants City of Lake Angelus (the "City") and various city officials, alleging violations of federal statutory and constitutional rights. Plaintiff is seeking declaratory and injunctive relief against the enforcement of City ordinances which prohibit the operation of seaplanes on the surface of Lake Angelus. Additionally, plaintiff seeks an award of attorney fees under 42 U.S.C. § 1988 for the alleged violation of his constitutional rights caused by enforcement of the ordinances. Before the court are the parties' cross motions for summary judgment and plaintiff's motions for declaratory judgment and a permanent injunction. For the reasons discussed below, the court will award partial relief to plaintiff.

## I. Background Facts

Plaintiff owns a waterfront home on Lake Angelus. He has been certified as a seaplane pilot by the Federal Aviation Administration ("FAA"). Lake Angelus is an inland lake that is approximately one and one-half miles long and three-quarters of a mile wide. The City is a residential community in Oakland County, Michigan, consisting of about 140 homes. Defendant Donald Althoff is the mayor of the City, and defendant Michael Stefani is its chief of police. The City lies within the airport traffic area and control zone of the FAA air traffic control tower located at the Oakland–Pontiac Airport.

On August 9, 1991, plaintiff landed a rented seaplane on Lake Angelus. He docked and moored the plane at his home on the shore of the lake. Subsequently, a city police officer contacted plaintiff and warned him that he had violated two city ordinances concerning seaplanes. He was warned not to land his seaplane on the lake again. Plaintiff was allegedly in violation of City ordinances 25(J) and 66(E). Ordinance 66(E) is an amendment to the City's zoning ordinance that reads in relevant part as follows:

4.10. *Nuisances prohibited.* Land may not be used for any of the following purposes, all of which are declared to be public nuisances:

E. The mooring, docking, launching, storage, or use of boats, watercraft, and air-

craft powered by internal combustion engines, other than conventional inboard motorboats.

Ordinance 25(J) is an amendment to the City's nuisance ordinance and it declared the following to be a nuisance:

> J. The landing upon the lands, waters, or ice surface within the Village of Lake Angelus of any aircraft, airplane, sailplane, seaplane, helicopter, ground effect vehicle, or lighter than air craft or the flying of any such craft in the airspace above the Village of Lake Angelus at an altitude of less than five hundred feet.

After plaintiff was warned not to land his seaplane on the lake, he asked the city council to rescind or modify the ordinances. Apparently in response to plaintiff's efforts, on September 10, 1991, the city council issued a resolution declaring that Ordinances 25(J) and 66(E) were intended to "protect the public health, safety, and general welfare" of the people and property of the City. The council listed "noise, danger, apprehension of danger, pollution, apprehension of pollution, contamination and infestation from other bodies of water," and "destruction of property values," among others, as ways in which the welfare of the City was protected by the ordinances.

Plaintiff subsequently filed this action, contending that the ordinances are preempted by federal and state law and/or violate his constitutional rights. He is asking the court to: (1) declare that Ordinances 25(J) and 66(E) are void, unenforceable, and unconstitutional pursuant to 28 U.S.C. § 2201; (2) issue a permanent injunction enjoining defendants from enforcing the ordinances; and (3) award costs and attorney fees to plaintiff pursuant to 42 U.S.C. § 1988 for the alleged constitutional violations under 42 U.S.C. § 1983.

Defendants argue that plaintiff lacks standing and that he has not presented an actual controversy to the court. Furthermore, defendants contend that the ordinances are not preempted and are regulations that are rationally related to a legitimate state interest.

The parties are in agreement that there are no genuine issues of material fact and that the case is ready to be decided by the court based on the applicable law.

## II. Justiciability

Defendants present multiple theories as to why plaintiff's action is not justiciable. Defendants claim that this case does not involve an "actual controversy" because plaintiff lacks standing and because the dispute is not ripe. The basis for this claim is the fact that no one has ever been arrested or prosecuted under either ordinance. Furthermore, defendants claim that no one has even been warned about the altitude restrictions contained in Ordinance 25(J).

Plaintiff argues that he presents an actual controversy because of the warning issued to him in the summer of 1991. At that time, a city police officer told plaintiff that he was in violation of the ordinances and that he would be arrested if he landed a seaplane on the lake again. Plaintiff was also warned later by other City officials against landing a seaplane on the lake.

■ In order to have standing, at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted).

■ The court finds that plaintiff has met his burden in establishing his standing to sue. Plaintiff has shown that he was threatened with arrest and prosecution. The court will not require plaintiff to get himself arrested and fined in order to address his challenge. It is clear that the threat of prosecution is fairly traceable to the City and its officials who have threatened to enforce the ordinances. Finally, a favorable decision for the plaintiff invalidating and enjoining the ordinances would remove the threat of prose-

cution hanging over plaintiff's head and allow him to fly and land seaplanes on Lake Angelus.

Plaintiff's claim is also ripe for adjudication. Ripeness, although similar to a challenge to standing, presents different prudential concerns. In order to determine if a claim is ripe, the court must evaluate the hardship to the parties of withholding judicial determination and whether the issues are fit for decision. *Abbott Labs., Inc. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The hardship to plaintiff is clear. Until a determination of his claim is made, he is prevented by the ordinances from landing a seaplane on the lake. The issues in this case are also fit for determination. Plaintiff presents purely legal issues of preemption which would not be aided by further factual development. *See Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F.Supp. 678, 687 (N.D.N.Y.1989). As such, plaintiff's claim is ripe for adjudication by this court.

The court finds that plaintiff has presented an "actual controversy" before this court. The action before the court satisfies the requirements of 28 U.S.C. § 2201(a) and Article III of the Constitution. It is not a "hypothetical" case, as defendants claim, but rather a real controversy over the enforcement of ordinances that restrict the activities of plaintiff. Therefore, plaintiff's claim is justiciable in this court.

### III. Federal Preemption

Article VI of the Constitution declares that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a result, state or local laws that conflict with federal law and regulations are preempted. *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).

Federal laws can invalidate local laws in several different ways. First, Congress can preempt state law "by so stating in express terms." *Hillsborough County v. Au-*

*tomated Medical Lab., Inc.*, 471 U.S. 707, 712–13, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Secondly, where Congress has not spoken expressly, "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Field preemption can also occur where the "federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Hillsborough*, 471 U.S. at 713, 105 S.Ct. at 2375. "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Id.* A state law conflicts with federal law when compliance with both is a "physical impossibility" or when state law is an "obstacle" to the objectives of Congress. *Id.* State or local laws regulating safety matters are favored unless it was the "clear and manifest purpose of Congress" that federal law would supersede the police powers of the state. *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152.

Plaintiff claims that ordinances 25(J) and 66(E) are preempted by the Federal Aviation Act of 1958 (the "Act"), 49 U.S.C.App. sections 1301–1551, and the applicable regulations issued by the FAA. Because Congress has not expressly spoken on this issue, the court must determine whether the ordinances at issue are preempted under one of the other doctrines governing preemption enunciated by the Supreme Court.

The court finds that the regulations in this area enacted pursuant to the Federal Aviation Act and the dictates of the Act itself, imply that Congress intended that this area be preempted. Section 1508(a) of the Act states: "The United States of America is hereby declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States, including the airspace above all inland waters." 49 U.S.C.App. section 1508(a). Furthermore, Congress expressly directed the formulation of comprehensive regulations governing air-

craft operations. *See* 49 U.S.C.App. §§ 1348(a) & (c).[1]

The Supreme Court addressed preemption under the Federal Aviation Act in *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). In *Burbank*, the Court held that the local noise abatement ordinance, enacted pursuant to the city's police powers, was preempted. The Court cited sections 1348(a) & (c) and 1508 in support of its conclusion that Congress intended to give the FAA "broad authority to regulate the use of the navigable airspace, 'in order to insure the safety of aircraft and the efficient utilization of such airspace ...' and 'for the protection of persons and property on the ground.'" *Id.* at 627, 93 S.Ct. at 1856 (quoting sections 1348(a) & (c)). Furthermore, the Court found that the "Federal Aviation Act requires a delicate balance between safety and efficiency and the protection of persons on the ground.... The interdependence of these factors requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." *Id.* at 638–39, 93 S.Ct. at 1862 (citation omitted).

Subsequent courts have followed the Supreme Court's guidance in *Burbank* in determining whether local ordinances are preempted under the Federal Aviation Act. *See United States v. City of Berkeley*, 735 F.Supp. 937 (E.D.Mo.1990) (FAA regulations preempt city's building code); *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F.Supp. 678 (N.D.N.Y.1989) (court finds in favor of small airport operators; sections of town ordinance regulating low-flying aircraft, parachute jumping, flight paths, noise, and insurance requirements were preempted); *Command Helicopters, Inc. v. City of Chica-go*, 691 F.Supp. 1148 (N.D.Ill.1988) (court nullifies local ordinance governing loading operations of helicopters); *United States v. City of Blue Ash*, 487 F.Supp. 135 (S.D.Ohio 1978) (court found that city ordinance restricting noise was preempted by federal law); *see also Allegheny Airlines, Inc. v. Cedarhurst*, 238 F.2d 812 (2d Cir.1956) (village ordinance preventing aircraft from flying over village at less than one thousand feet was unconstitutional).

The *Command* case is especially persuasive in applying the Supreme Court's guidance in *Burbank*. In *Command*, the court found that the Federal Aviation Act and its attendant regulations occupied the field of the regulation of aircraft operations. *Command*, 691 F.Supp. at 1151. The court found a need for uniformity in the requirements governing the operation of aircraft, thereby avoiding a "substantial negative effect on commerce." *Id.*

In applying the Supreme Court's holding in *Burbank* to the circumstances at issue in this case, it is clear that the ordinances are preempted. The FAA has promulgated extensive regulations governing aircraft operations. Part 91 "prescribes rules governing the operation of aircraft ... within the United States." 14 C.F.R. § 91.1(a). It provides regulations governing all aspects of the operation of aircraft. Section 91.119 provides:

Minimum safe altitudes: General

Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

. . . . .

(c) Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In those cases, the aircraft

---

1. Section 1348(a) reads in relevant part:
 The Administrator ... is authorized and directed to develop plans for and formulate policy with respect to the use of navigable airspace; and assign by rule, regulation, or order the use of the navigable airspace under such terms, conditions, and limitations as he may deem necessary in order to insure the safety of aircraft and the efficient utilization of such airspace.
 49 U.S.C.App. § 1348(a). Section 1348(c) provides as follows:

The Administrator ... is ... authorized and directed to prescribe air traffic rules and regulations governing the flight of aircraft, for the navigation, protection, and identification of aircraft, for the protection of persons and property on the ground, and for the efficient utilization of the navigable airspace, including rules as to safe altitudes of flight and rules for the prevention of collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects.
*Id.* § 1348(c).

may not be operated closer than 500 feet to any person, vessel, vehicle, or structure. *Id.* Additionally, section 91.115 regulates the operation of aircraft on the surface of water, providing guidance for the use of seaplanes.[2]

These regulations, along with the Federal Aviation Act, demonstrate congressional intent to preempt local regulations governing flight operations. Ordinance 25(J) prohibits seaplanes from flying in the airspace of the City at less than 500 feet, it also prohibits seaplanes from landing on the lake. Ordinance 66(E) prohibits the operations of a seaplane on the surface of the lake. The court finds that these two sections are preempted by federal law and regulations. Defendants ask the court to bifurcate the ordinances, separately considering the altitude restriction and the restriction on seaplane operations on the surface of the lake. The court notes, however, that the FAA regulations specifically deal with both aspects of the ordinances. 14 C.F.R. §§ 91.115 & 91.-119. Defendants seem willing to give up the altitude restriction, but not the landing portion. The court finds this a distinction without a difference. The FAA provides safety regulations for take-offs, landings, and operations on water, as well as allowable altitudes. The purpose of the City ordinances, taken as a whole, is to prohibit seaplane operations of any kind on the lake or up to 500 feet above the City. This is clearly contrary to the FAA regulations and federal statutes, and thus, the ordinances are preempted.

Defendants cite two cases that concern local ordinances governing seaplanes in support of their position that preemption does not apply in this case.[3] *See City of Shreveport v. Conrad*, 212 La. 737, 33 So.2d 503 (1947); *People v. Altman*, 61 Misc.2d 4, 304 N.Y.S.2d 534 (N.Y.Sup.Ct.1969). The court does not find them persuasive. *Conrad* did not even address preemption and was decided before *Burbank* and before the Federal Aviation Act was even enacted. In *Altman*, a New York court found that a local ordinance prohibiting seaplane landings in a system of channels was not preempted because it was in harmony with a federal statute. *Altman*, however, was decided before *Burbank*, and the court did not address the FAA regulations at issue in this case.

The sections of the City ordinances at issue conflict with and are obstacles to FAA regulations. In addition, the comprehensive nature of the federal regulations and laws in the area of flight operations, landings, take-offs, and water operations indicates that federal law occupies the field. The portion of Ordinances 25(J) and 66(E) restricting the operation of seaplanes is therefore preempted.

Because the court finds that the ordinances are preempted by federal law, the court will not address plaintiff's claim that the ordinances are also preempted by state law.

### IV. Constitutional Claims

 Plaintiff also presents a claim under 42 U.S.C. § 1983, for violations of his constitutional rights. Even though the court has already decided the case based on federal preemption, the court will address the section 1983 claim in order to determine if plaintiff is deserving of costs and attorney fees under 42 U.S.C. § 1988.

 After examining plaintiff's constitutional claims, the court finds that they are without merit. Plaintiff has failed to show that his due process or equal protection

---

**2.** It provides:

Right-of-way rules: Water operations.

(a) General. Each person operating an aircraft on the water shall, insofar as possible, keep clear of all vessels and avoid impeding their navigation, and shall give way to any vessel or other aircraft that is given the right-of-way by any rule of this section. *Id.* § 91.115.

**3.** Defendants also cite *Blue Sky* and *Faux–Burhans v. County Comm'rs*, 674 F.Supp. 1172

(D.Md.1987), *aff'd without opinion*, 859 F.2d 149 (4th Cir.1988), *cert. denied*, 488 U.S. 1042, 109 S.Ct. 869, 102 L.Ed.2d 992 (1989). As already noted, however, the court in *Blue Sky* invalidated several local ordinances because they were preempted by FAA regulations. *Faux–Burhans* is also inapplicable because that case involved land use regulations governing the development of land in the construction of an airport. It did not involve ordinances that directly regulated aircraft flight operations as this case does.

rights were in any way violated.[4] He has made no showing that the ordinances are overbroad, ambiguous, or vague. In addition, defendants have presented multiple rationales supporting the ordinances. The court finds that each of them is rationally related to a legitimate state interest. For these reasons, the court will grant defendants' motion for summary judgment on plaintiff's section 1983 claims.

### V. Conclusion

 Pursuant to 28 U.S.C. § 2201, the court will declare that those portions of Ordinances 25(J) and 66(E) governing the operation of seaplanes are preempted by federal law. The court will issue a permanent injunction to the extent that plaintiff has prevailed on the merits on his preemption claims. *Blue Sky,* 711 F.Supp. at 697; 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2944, at 398 (1973). Plaintiff has no adequate remedy at law and the balance of equities favors him.[5] Without an injunction, plaintiff would be prevented from operating a seaplane on Lake Angelus or at an altitude below 500 feet. Third parties will not be harmed by the injunction because anyone operating a seaplane on the lake will have to do so in compliance with FAA safety regulations. Finally, the public interest will be served by the injunction as preemption of these ordinances will guarantee a uniform set of regulations governing aircraft operations. Based on this analysis, the court will order the City and its employees and officials not to enforce the ordinances as described above.

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiff's motion for a permanent injunction is **GRANTED.**

---

4. The court also notes that a section 1983 claim premised on a violation of the supremacy clause through preemption is not cognizable. *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1476–77 (10th Cir.1985); *Pirolo v. City of Clearwater,* 711 F.2d 1006 (11th Cir.1983).

It is further **ORDERED** that defendants' motion for summary judgment on plaintiff's section 1983 and 1988 claims is **GRANTED.**

**SO ORDERED.**

---

5. The Sixth Circuit set forth the factors to be considered in granting a preliminary injunction in *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985) (success on the merits, irreparable injury, harmful effect to third parties, and public interest). The court will consider these factors in making its determination of whether to grant a permanent injunction in this case.