**Joel PRICE, an Individual, and Price Aviation, Inc., a Michigan Corporation, Plaintiffs,**

v.

**CHARTER TOWNSHIP OF FENTON, a Michigan Municipal Entity, Defendant.**

**Civil Action No. 95–40115.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 30, 1995.

John P. Siler, Bellairs, Dean, Cooley, Siler & Moulton, Flint, MI, for Richard T. Gall.

Marshall G. MacFarlane, Krass & Young, Ann Arbor, MI, for Price Aviation, Inc.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiffs brought suit alleging that Fenton Township Ordinance 458, regulating the frequency of certain flights at plaintiffs' airport, is unconstitutional because preempted by federal aviation law. Plaintiffs now move for summary judgment and a permanent injunction preventing Fenton from enforcing its ordinance against plaintiffs. Fenton moves for judgment on the pleadings, arguing that there is no federal preemption. For the reasons stated below, the court will grant the plaintiffs' motion. Before launching into an analysis of preemption under federal aviation law, the court will provide an overview of the factual background.

### I. Factual Background

Plaintiffs have privately owned and operated Price's Airport, a public use airport located within Fenton, Michigan, since 1966. Price's Airport is a home base for approximately seventy aircraft. Operations at Price's Airport include a flight school and aircraft fuel, service, and storage facilities. Price's Airport is located in an agricultural zoning district, which permits the presence of airports after special approval by the Fenton Township Planning Commission.[1] Recently, over 600 residential units have been approved by the township for construction within approximately two miles of Price's Airport.

Plaintiffs' relationship with Fenton and its residents near the airport became turbulent during and after the summer of 1994. In the summer of 1994, plaintiffs leased space at Price's Airport to North American Top Gun (hereinafter "Top Gun"), a company that operated three "warbird" aircraft[2] for the purpose of providing airplane rides to the general public, for a fee. The operation of Top Gun's warbirds raised a flap among several residents of Fenton, who subsequently flocked to the Fenton Planning Commission to complain of the noise generated by these aircraft.

Fenton responded by enacting Ordinance 458,[3] effectively clipping the wings of Top Gun's warbirds. Ordinance 458 prohibits plaintiffs from allowing any commercial enterprise (such as Top Gun) to use their airport if such use will cause more than four takeoffs and landings of a plane with a jet engine, or an engine with more than 299 horsepower, within a 24 hour period. Violations of Ordinance 458 are punishable by fines of not more than $100.00 (plus court costs), imprisonment of not more than ninety days, or both. Each day in which a violation occurs is a separate offense. It is undisputed that Ordinance 458 applies to Top Gun's activities at Price's airport.

Plaintiffs responded by initiating this action, in which they request that this court

---

1. Apparently, plaintiffs did not need to receive the Fenton Township Planning Commission's approval because Price's Airport was in existence before the passage of this local zoning ordinance.

2. Apparently these aircraft are vintage airplanes from World War II.

3. Ordinance 458 reads, in pertinent part:

   1. Definitions.

    ....

    b) Airport shall include any publicly or privately owned facility intended for the landing and takeoff of aircraft.

    c) Controlled airport shall mean any airport at which the approaches to landing, ground operations, takeoffs and departures following takeoff, are controlled at all times, or during portions of a 24 hour period, by Federal Aviation Administration Air Traffic Controllers operating from a tower or similar facility located on the airport.

    d) Uncontrolled airport shall mean any airport which is not a Controlled airport.

    e) Operator shall mean the owner of the airport and person or entity responsible for day to day management of the airport.

    ....

   3. No operator of an uncontrolled airport in Fenton Township, whether constructed before or after the effective date of this ordinance, shall permit any commercial enterprise to operate aircraft at the airport if such operation entails more than four takeoffs or four landings of an aircraft having one or more engines in excess of 299 horsepower, or having a jet engine, within a 24 hour period. For the purposes of this subsection, a commercial enterprise shall mean any aircraft operation conducted for the purpose of earning financial or other consideration.

hold that Ordinance 458 is preempted by federal aviation law and enjoin Fenton from enforcing it against plaintiffs. On May 15, 1995, this court entered a preliminary injunction, enjoining Fenton from enforcing Ordinance 458 against plaintiffs during the pendency of this action. Plaintiffs now move for summary judgment. Defendant moves for judgment on the pleadings. There are no material issues of fact that are in dispute. The only questions are those of law. Thus, this case is an appropriate one for summary disposition.

## II. Analysis

■ The thrust of plaintiffs' argument is that Ordinance 458 violates the Supremacy Clause of the Constitution[4] by regulating in an area that has been preempted by federal law, i.e., the Federal Aviation Act of 1958, 49 U.S.C. app. § 1301–1557, including the Noise Control Act of 1972, 49 U.S.C. app. § 1431–32.[5] Although there is a presumption that federal law does not supersede the police powers of the states, federal preemption is a venerable concept of American jurisprudence,[6] which arises in several limited circumstances. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). State law may be preempted when a federal law expressly states that it is preempted. *Hillsborough County v. Automated Medical Lab, Inc.*, 471 U.S. 707, 712–13, 105 S.Ct. 2371, 2374–75, 85 L.Ed.2d 714 (1985). Additionally:

[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.... Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.

*Rice*, 331 U.S. at 230, 67 S.Ct. at 1152. Further, "state law is nullified to the extent that it conflicts with federal law." *Hillsborough*, 471 U.S. at 713, 105 S.Ct. at 2375.

■ In determining the preemptive power of the Federal Aviation Act, this court is not exactly flying into uncharted territory. The Supreme Court in *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), discussed at length Congress' intent regarding the preemptive scope of the Federal Aviation Act and Noise Control Act. In *Burbank*, the Court reviewed the constitutionality of a local ordinance that prohibited flights of jet airplanes from the Hollywood–Burbank Airport between the hours of 11:00 p.m. and 7:00 a.m. Like Price's Airport, the Hollywood–Burbank Airport was privately owned. Due to the light air traffic at the Hollywood–Burbank Airport, only one regularly scheduled flight was affected by the local curfew, a flight from Burbank to San Diego, leaving every Sunday night at 11:30 p.m.

In determining the scope of preemption under these acts, the Court first noted the broad language found in 49 U.S.C. app. § 1508, "The United States of America is hereby declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States...." *Id.* at 626–27, 93 S.Ct. at 1856–57. The Court also discussed the intricate regulatory scheme developed by the Noise Reduction Act, which authorizes the Federal Aviation Administration (hereinafter "FAA"), in conjunction with the EPA, to provide "for the control and abatement of aircraft noise and sonic boom, including the application of such standards in the issuance, amendment, modification, suspension, or revocation of any certificate authorized by this title." *Id.* at 629,

---

4. U.S. Const. art. VI, cl. 2 reads, in pertinent part:

This Constitution, and the Laws of the United States which shall be made in pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

5. The defendant has conceded that plaintiffs have standing to bring this action. Thus, the issues of

standing, ripeness, and the presence of an actual case or controversy will not be discussed further, except to state that an examination of the factual background of this case convinces the court that plaintiffs do have standing and that there is an actual case or controversy before the court that is ripe for adjudication.

6. *See Cooley v. Board of Wardens*, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1852).

93 S.Ct. at 1858. While recognizing that there is "no express provision of pre-emption in the 1972 [Noise Control] Act," the Court concluded that "the pervasive nature of the scheme of federal regulation of aircraft noise" implied preemption. *Id.* at 633, 93 S.Ct. at 1859. The Court stated:

> Control of noise is of course deep seated in the police power of the States. Yet the pervasive control vested in EPA and in FAA under the 1972 Act seems to us to leave no room for local curfews or other local controls.... The Federal Aviation Act requires a delicate balance between safety and efficiency, and the protection of persons on the ground.... The interdependence of these factors requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled.
>
> ....
>
> ... We are not at liberty to diffuse the powers given by Congress to FAA and EPA by letting the States or municipalities in on the planning.

*Id.* at 638–40, 93 S.Ct. at 1862–63. The Court determined that the curfew ordinance was intended to regulate airplane noise, and was therefore preempted.[7]

The *Burbank* Court supported its conclusion by noting that Senator Tunney, when describing the regulatory scheme on the floor of the Senate stated:

> proposed means of reducing noise in airport environments [include] the regulation of flight patterns and aircraft and airport operations, and modifications in the number, frequency, or scheduling of flights [as well as] ... the imposition of curfews on noisy airports, the imposition of flight path alterations in areas where noise was a

problem, the imposition of noise emission standards on new and existing aircraft....

*Burbank,* 411 U.S. at 637, 93 S.Ct. at 1861 (quoting 19 Cong.Rec. S at 18644 (Oct. 18, 1972)). The Court viewed this listing of proposed actions by the federal government as evidence that states were preempted from taking these actions. With respect to the present case, it is important to note that these proposed federal actions include regulating the number, frequency, and scheduling of flights.

The Court also supported its conclusion with the following excerpt from the debates concerning the Noise Control Act:

> The courts have held that the Federal Government presently preempts the field of noise regulation insofar as it involves controlling the flight of aircraft.... State and local governments will remain unable to use their police powers to control aircraft noise by regulating the flight of aircraft.

*Id.* at 635, 93 S.Ct. at 1860 (quoting Secretary of Transportation Boyd, in a letter to the Senate describing the preemptive impact of the Noise Reduction Act). Under *Burbank,* an ordinance restricting the *timing* of flights is considered to be a preempted regulation of the "flight of aircraft." *Id.* at 640, 93 S.Ct. at 1863. Thus, an ordinance restricting the *frequency* of flights would also seem to land squarely within the area of regulations that are preempted by the Federal Aviation Act.

Federal courts, in the wake of *Burbank,* have held that various attempts by local governments to enforce their police powers to control noise or otherwise affect flights are preempted. *Blue Sky Entertainment, Inc. v. Town of Gardiner,* 711 F.Supp. 678

---

7. Neither *Burbank* nor the present case deals with the ability of a state or city to restrict the frequency or timing of flights in airports for which the state or city is a proprietor. These cases deal with the ability of a locality to exercise its police powers over private airports. *See Burbank,* 411 U.S. at 635 n. 14, 93 S.Ct. at 1860 n. 14 ("[W]e are concerned here not with an ordinance imposed by the City of Burbank as 'proprietor' of the airport, but with the exercise of police power.")

Defendant argues that this dichotomy, which allows cities to restrict airports for which they are proprietors but not restrict privately owned airports, leaves residents without a remedy when the operator of a private airport irresponsibly creates unnecessary noise. This is not true. The residents' remedy is to seek redress from the federal government by requesting enforcement of existing federal regulations promulgated by Congress or the Federal Aviation Administration or by requesting the creation of new regulations by these bodies.

(N.D.N.Y.1989) (ordinance that limits, inter alia, decibel levels and flight paths of airplanes is preempted); *United States v. City of Blue Ash,* 487 F.Supp. 135 (S.D.Ohio 1978) (ordinance requiring aircraft to make "noise abatement turns" is preempted); *Command Helicopters, Inc. v. City of Chicago,* 691 F.Supp. 1148 (N.D.Ill.1988) (ordinance regulating lifting operations of helicopters is preempted); *Gustafson v. City of Lake Angelus,* 856 F.Supp. 320 (E.D.Mich.1993) (ordinances restricting the storage, landing, and flight altitude of aircraft are preempted).

■ Further, the plaintiffs' case is strengthened by the position of the FAA that Ordinance 458 is preempted. Plaintiffs have enclosed with their brief a letter from the FAA which states that the present case, as far as the FAA is concerned, is nearly identical to the case of *Country Aviation, Inc. v. Tinicum Township,* No. 92–3017, 1992 WL 396782 (E.D.Penn. December 22, 1993), in which the FAA took the position that a local ordinance enacted to limit noise levels of airplanes was preempted. As the agency in charge of administering portions of the Federal Aviation Act, the FAA's opinion should be considered by this court. *See Chemical Mfrs. Ass'n v. Natural Resources Defense Council,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985); *Blue Sky Entertainment, Inc. v. Town of Gardiner,* 711 F.Supp. 678, 693 (N.D.N.Y.1989).

Defendant misguidedly attempts to distinguish *Burbank* and the other preemption cases by drawing a distinction between ordinances that regulate aircraft operations in flight or the use of navigable airspace (which defendant concedes are preempted) and ordinances that are "simple zoning" ordinances regulating the type of activity permitted on land within Fenton. Unfortunately for defendant, *Burbank* and its progeny do not support such a distinction in this case.

To begin with, Ordinance 458 restricts flight operations. The defendant cannot credibly argue that because the ordinance limits takeoffs and landings, but not flight paths, it is not a regulation on flight operations. It is difficult, if not impossible, to draw a distinction between regulation concerning the "flight" of aircraft and regulation concerning the takeoff and landing of aircraft. Obviously, there cannot be one without the other two. As stated in *Burbank,* "[t]he moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls." *Burbank,* 411 U.S. at 634, 93 S.Ct. at 1860. Also, *Burbank* refused to make such a distinction, holding that the defendant's concession that there is preemption regarding airspace management was "fatal" to the defendant's argument that a curfew on flights was not preempted. *Id.* at 627, 93 S.Ct. at 1856. There is scant difference between the *Burbank* restriction on timing of flights and Fenton's restriction on the frequency of flights. Both are fairly construed as regulations of flight operations.

Further, defendant's statement that federal courts "have not ... restricted local or state regulation relating land use restrictions and zoning laws" is simply not true. In *Gustafson,* this court held that an amendment to a city's zoning ordinance that prohibited the "mooring, docking, launching, storage, or use of ... aircraft powered by internal combustion engines ..." was preempted. *Gustafson,* 856 F.Supp. at 322, 326. Clearly, that ordinance was a zoning law that regulated the type of activity permitted on land within the township. Nonetheless, the zoning law violated the Supremacy Clause.

The defendant lifts language from the *Burbank* dissent to support its argument, but glides over the majority opinion. Justice Rehnquist, in dissent, did state that, according to the congressional history of the Federal Aviation Act and the Noise Control Act, those acts never intended to diminish "the authority of units of local government to control the effects of aircraft noise through the exercise of land use planning and zoning powers...." *Id.* at 650, 93 S.Ct. at 1868. In light of the *Burbank* majority's holding that ordinances restricting flight schedules are not valid exercises of state zoning power, this language in the congressional history does not give talismanic protection to those ordinances that are characterized as zoning laws. Nobody denies that Fenton has the ability to create zoning laws so that airports are not placed snugly between hospitals, churches, schools, cemeteries, and the like. If Fenton

wanted to prevent the construction of an airport that it felt would be disruptive to the surrounding area, it most likely could do so. Faced with the ongoing operations of Price's Airport, however, Fenton may not, under the pretense of its zoning power, attempt to regulate those flight operations to quell airplane noise. The power to create such restrictions, regardless of whether they are called zoning laws, is relegated exclusively to the federal government under *Burbank.*

*San Diego Unified Port Dist. v. Gianturco,* 651 F.2d 1306 (9th Cir.1981), also quotes the language from the *Burbank* dissent cited by the defendant, but recognizes that there are limitations on a state's power: "The observation that a state has a power in no way implies any doubt about equally well-settled limits to that power, such as federal preemption." *Gianturco,* 651 F.2d at 1316. The Ninth Circuit held that "[l]ocal governments may adopt abatement plans *that do not impinge on aircraft operations." Id.* at 1314. Ordinance 458 cannot leap this hurdle because it impinges on aircraft operations at Price Airport. In fact, Ordinance 458 was enacted for the purpose of impinging upon Top Gun's flight operations at Price's Airport. Thus, defendant cannot successfully rely on Ordinance 458's status as a "zoning" ordinance to prop up its case.

Defendant also heavily relies on *Faux–Burhans v. County Comm'rs of Frederick County,* 674 F.Supp. 1172 (D.Md.1987), in which the court held that certain zoning ordinances were not preempted by the Federal Aviation Act and the Noise Control Act. In *Faux–Burhans,* Frederick County granted a special exception under the zoning laws to the plaintiff's father-in-law to operate a private airstrip in accordance with certain restrictions. Plaintiff inspected and repaired planes on the land and the strip was presumably used only by those planes being serviced. Plaintiff's father-in-law conveyed the land to plaintiff, who then paved the runways, improved a hangar that he had previously built, and registered the facility with the FAA as a private airport. The County stated that the airstrip, in spite of the improvements, was still subject to the zoning restrictions. The restrictions, unfortunately,

are not directly quoted in the opinion, but appeared to regulate:

> the intensity of use (by the number of aircraft), the type of aircraft that can use the facility (by takeoff distance required), the clear zone at the runway ends (by prohibiting building thereon), the locale of operation (by setback requirements), and the type of aircraft operations (by prohibiting instructional flights).

*Id.* at 1174.

Although this court need not distinguish *Faux–Burhans* because it arises from the District of Maryland, *Faux–Burhans* can be distinguished from the present case. In spite of its holding, *Faux–Burhans* states that there is preemption when local noise regulations "infringe[ ] upon the federally pre-empted regulation of navigable airspace, by directly affecting the manner in which, and the type of aircraft by which, flight operations were to be conducted *from airports that were otherwise open to air traffic in general." Id.* at 1174 (emphasis added). *Faux–Burhans* dealt with the creation of a private airport from a landing strip, not an airport "otherwise open to air traffic in general." *Id.* at 1174. In *Faux–Burhans,* the county was merely attempting to enforce the zoning requirements that had always applied to the landing strip and were conditions of its conception. In contrast, at the time that Ordinance 458 was enacted, Price's Airport was clearly "otherwise open to air traffic in general." Thus, under the above-quoted language, Ordinance 458 is preempted. Ordinance 458 directly affects the manner in which, and the type of aircraft by which, flight operations at Price's Airport occur by limiting the frequency of takeoffs and landings of planes with engines larger than 299 horsepower.

To the extent that *Faux–Burhans* holds that, as applied to an airport like Price's Airport under the facts of this case, local zoning regulations that restrict the number, timing, or frequency of flights are not preempted by federal law, this court declines to treat *Faux–Burhans* as persuasive precedent and expressly holds otherwise.

■ Defendant also allots a fair amount of space in his brief to a discussion of the

ascension of Chief Justice Rehnquist, who wrote the dissent in *Burbank*, to his current position, the change in the composition of the Court since *Burbank*, and the general views of the current Court towards states' rights, as evidenced in recent cases like *United States v. Lopez* and *United States Term Limits Inc. v. Thornton*. The upshot of defendant's argument is that *Burbank* has been weakened as precedent somehow by these changes in the Court. For example, defendant argues:

> In light of the Chief Justice's dissenting opinion in *Burbank*, ... and the trend of a majority of the Court to protect the powers of the separate states pursuant to the Tenth Amendment, it seems probable that the Court would affirm the right of local governments to reasonably control use and development of private airports through the zoning process.

This argument simply does not fly. The impropriety of this type of argument was thoughtfully addressed in a recent Sixth Circuit opinion:

> While we understand that changes in Court personnel may alter the outcome of Supreme Court cases, we do not sit as fortune tellers, attempting to discern the future by reading the tea leaves of Supreme Court alignments. Each case must be reviewed on its merits in light of precedent, not on speculation about what the Supreme Court might or might not do in the future, as a result of personnel shifts.

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1107 n. 3 (6th Cir.1995).

For the aforementioned reasons, this court holds that, to the extent that Ordinance 458 limits the frequency of flights of certain airplanes, it is preempted by the Federal Aviation Act and violates the Supremacy Clause of the Constitution. Having held that plaintiff has succeeded on the merits, this court must now determine the appropriateness of issuing a permanent injunction preventing Fenton from enforcing the unconstitutional portions of Ordinance 458 against plaintiffs. "As a general rule, this court will issue a permanent injunction when there is no adequate remedy at law and when the balance of the equities favors the party seeking relief." *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F.Supp. 678, 690 (N.D.N.Y.1989); *See Gustafson v. City of Lake Angelus*, 856 F.Supp. 320, 327 (E.D.Mich.1993). In the present case, this court believes that plaintiffs have no adequate remedy at law and that it would be equitable to issue a permanent injunction. Issuing a permanent injunction would not be against public policy because the injunction supports the uniform federal regulations promulgated by the FAA for the purpose of ensuring "safety and efficiency, and the protection of persons on the ground." *Burbank*, 411 U.S. at 638–39, 93 S.Ct. at 1862–63. Further, this injunction will not cause undue harm to third parties because the plaintiffs are still subject to all applicable federal regulations concerning flights at Price's Airport. Residents of Fenton are protected by these regulations. Accordingly, this court will issue a permanent injunction preventing the defendant from enforcing the unconstitutional provisions of Ordinance 458 against plaintiffs.

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiffs' motion for summary judgment be **GRANTED.**

It is hereby further **ORDERED** that defendant's motion for judgment on the pleadings be **DENIED.**

It is hereby further **ORDERED** that defendant, its officers, agents, and attorneys, as well as all other persons in concert or participation with defendant are hereby **PERMANENTLY ENJOINED** from enforcing the provisions of Section 7.03(b)(3) of Fenton Ordinance 458 against plaintiffs, their officers and agents, and persons using Price's Airport.

**SO ORDERED.**