76 F.3d 778
 64 USLW 2565
 Robert GUSTAFSON, Plaintiff-Appellee/Cross-Appellant,
v.
CITY OF LAKE ANGELUS; Donald Althoff, Mayor of the City of
Lake Angelus; Michael Stefani, Chief of Lake
Angelus Police Force,
Defendants-Appellants/Cross-Appellees.
 Nos. 93-2508, 93-2537.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 20, 1995.
Decided Feb. 27, 1996.
Rehearing and Suggestion
for Rehearing En Banc
Denied April 3, 1996.
 
 Thomas M. Slavin (argued and briefed), Steven M. Chait (briefed), Sullivan, Ward, Bone, Tyler, Fiott & Asher, Southfield, MI, for Robert Gustafson.
 John D. Staran (briefed), James L. Howlett (argued), Beier & Howlett, Bloomfield Hills, MI, for City of Lake Angelus, Donald Althoff, Michael Stefani.
 Koteles Alexander (briefed), Alexander, Gebhardt, Aponte & Marks, Silver Spring, MD, for Michigan Mun. League, National Institute of Mun. Law Officers.
 Donald C. Frank (briefed), Pratt & Frank, Okemos, MI, for Seaplane Pilots Ass'n.
 Before: JONES, CONTIE, and BATCHELDER, Circuit Judges.
 CONTIE, J., delivered the opinion of the court. JONES (p. 792), and BATCHELDER (p. 793), JJ., delivered separate concurring opinions.
 
 
 1
 CONTIE, Circuit Judge.
 
 
 2
 Defendants-appellants/cross-appellees, the City of Lake Angelus, Donald Althoff, Mayor of the City of Lake Angelus, and Michael Stefani, Chief of the Lake Angelus Police Force, appeal the district court's grant of summary judgment to plaintiff-appellee/cross-appellant, Robert Gustafson, holding that city ordinances prohibiting the operation of seaplanes on the surface of Lake Angelus are preempted by federal law.[1] Plaintiff Gustafson cross-appeals from the district court's grant of summary judgment to defendants in regard to plaintiff's 42 U.S.C. §§ 1983 and 1988 claims that the ordinances denied his due process and equal protection rights in violation of the Fourteenth Amendment and that he should be awarded attorneys fees. For the following reasons, we affirm in part and reverse in part.
 
 I.
 
 3
 Plaintiff Robert Gustafson, a seaplane pilot, brought suit against defendants, the City of Lake Angelus (the "City") and various city officials, challenging city ordinances prohibiting the operation of seaplanes on the surface of Lake Angelus as preempted by federal law. Plaintiff sought declaratory and injunctive relief against enforcement of the ordinances. Plaintiff also presented a claim under 42 U.S.C. § 1983 for the violation of his constitutional rights caused by enforcement of the ordinances and sought an award of attorneys fees pursuant to 42 U.S.C. § 1988.
 
 
 4
 Plaintiff owns a waterfront home on Lake Angelus, an inland lake in Oakland County, Michigan, that is approximately one and one-half miles long and three-quarters of a mile wide. The City of Lake Angelus is a residential community consisting of about 140 homes around the lake and lies within the airport traffic area and control zone of the FAA air traffic control tower located at the Oakland-Pontiac airport.
 
 
 5
 Plaintiff Gustafson has been certified as a seaplane pilot by the Federal Aviation Administration ("FAA"). On August 9, 1991, plaintiff landed a rented seaplane on Lake Angelus and then docked and moored the plane at his home on the shore of the lake. Subsequently, a city police officer notified plaintiff that he had violated two city ordinances concerning seaplanes and warned him not to land his seaplane on the lake again. Plaintiff was not prosecuted for violating the ordinances.
 
 
 6
 Plaintiff was in violation of city ordinances 66(E) and 25(J). Ordinance 66(E) is an amendment to the City's zoning ordinance, which reads in relevant part:[2]
 
 
 7
 4.10. Nuisances prohibited. Land may not be used for any of the following purposes, all of which are declared to be public nuisances:
 
 
 8
 E. The mooring, docking, launching, storage, or use of any ... aircraft powered by internal combustion engines....
 
 
 9
 Ordinance 25(J) is an amendment to the City's nuisance ordinance, and states that the following is a public nuisance:
 
 
 10
 J. The landing upon the lands, waters, or ice surface within the Village of Lake Angelus of any aircraft, airplane, sailplane, seaplane, helicopter, ground effect vehicle, or lighter than air craft.
 
 
 11
 After plaintiff was warned not to land his seaplane on the lake, he asked the city council to rescind or modify the ordinances. In response to plaintiff's efforts, on September 10, 1991, the city council issued a resolution declaring that ordinances 25(J) and 66(E) were intended to "protect the public health, safety, and general welfare" of the people and property of the City. The council listed "noise, danger, apprehension of danger, pollution, apprehension of pollution, contamination and infestation from other bodies of water, destruction of property values, and interference with other lawful uses of the lake enjoyed by the great majority of citizens, including boating, sailing, fishing, swimming, and other recreational uses," as ways in which the welfare of the City was protected by the ordinances.
 
 
 12
 Plaintiff filed this action in the United States District Court for the Eastern District of Michigan, contending that the ordinances are preempted by federal and state law and that they violate his constitutional rights. He asked the court to: (1) declare that ordinances 25(J) and 66(E) are void, unenforceable, and unconstitutional pursuant to 28 U.S.C. § 2201; (2) issue a permanent injunction enjoining defendants from enforcing the ordinances; and (3) award costs and attorneys fees to plaintiff pursuant to 42 U.S.C. § 1988 for the alleged constitutional violations under 42 U.S.C. § 1983.
 
 
 13
 On October 21, 1993, the district court heard the parties' cross-motions for summary judgment and plaintiff's motion for declaratory judgment and a permanent injunction. On October 22, 1993, the district court issued an opinion. Pursuant to 28 U.S.C. § 2201, the court found that ordinances 25(J) and 66(E) governing the operation of seaplanes on the surface of Lake Angelus are preempted by federal law. The court granted plaintiff Gustafson's motion for summary judgment on this issue and issued a permanent injunction against the City from enforcing the ordinances.
 
 
 14
 However, in regard to plaintiff's claim under 42 U.S.C. § 1983 for violations of his constitutional rights, the court granted the City's motion for summary judgment. The court stated that even though it had decided the case based on federal preemption, the court would address the section 1983 claim in order to determine if plaintiff was deserving of costs and attorneys fees under 42 U.S.C. § 1988. After examining plaintiff's constitutional claims, the court found they were without merit. The court determined that plaintiff failed to show that his due process or equal protection rights were violated and that he made no showing that the ordinances were overbroad, ambiguous, or vague. In addition, the court found that in order to support the ordinances, the City had presented multiple rationales, which were rationally related to legitimate government interests. For these reasons, the court granted the City's motion for summary judgment on plaintiff's 42 U.S.C. § 1983 claim and determined that plaintiff should not be awarded costs and attorneys fees pursuant to 42 U.S.C. § 1988.
 
 
 15
 Defendants filed a timely notice of appeal in regard to the district court's issuance of a permanent injunction prohibiting the City from enforcing the ordinances against the operation of seaplanes on the surface of Lake Angelus. Plaintiff Gustafson filed a cross-appeal, challenging the portions of the district court's opinion that found no violation of due process or equal protection rights pursuant to 42 U.S.C. § 1983 and denied costs and attorneys fees pursuant to 42 U.S.C. § 1988.
 
 II.
 
 16
 We must first decide whether the district court erred in determining that the City of Lake Angelus ordinances 25(J) and 66(E), which prohibit the operation of seaplanes on the surface of Lake Angelus, are preempted by federal law.
 
 
 17
 The doctrine of preemption springs from the Supremacy Clause of the Constitution: "[t]he Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const., art. VI, cl. 2; Fidelity Federal Savings & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). As interpreted by Chief Justice Marshall, "in every case, the act of Congress, or the treaty, is supreme; and the law of the state, though enacted in the exercise of powers not controverted, must yield to it." Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). Preemption is predicated on congressional intent. The will of Congress to monopolize an area of legislation may be expressed in the authorizing statute and in the regulations enacted pursuant to that statute. Hillsborough County, Florida v. Automated Medical Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).
 
 
 18
 A statute may be construed as preemptive under three circumstances. Id. First, Congress, in enacting a federal statute, may express a clear intent to preempt state law. Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n, 461 U.S. 190, 203, 103 S.Ct. 1713, 1721-22, 75 L.Ed.2d 752 (1983). Second, absent express preemption, federal law may have an implied preemptive effect if Congress revealed this intent by "occupying the field" of regulation. Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). There is implied preemption when there is a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" or "because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Fidelity Federal Savings & Loan Ass'n, 458 U.S. at 153, 102 S.Ct. at 3022. There is a third type of preemption when state law actually conflicts with federal law. Such conflict occurs where "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).
 
 
 19
 The focus of a preemption inquiry is on congressional intent. In the present case, we must determine whether Congress, in passing the Federal Aviation Act, 49 U.S.C. §§ 40101-41901 [formerly 49 U.S.C. §§ 1301-1557][3] intended to preempt the right of a local government to designate and regulate aircraft landing areas, specifically seaplane landings on a lake. Plaintiff concedes that Congress has not expressly spoken on this issue, but argues that the City's ordinances are preempted under the second prong of the preemption doctrine--pervasive federal regulation of the field.
 
 
 20
 The district court in Gustafson v. City of Lake Angelus, 856 F.Supp. 320 (E.D.Mich.1993) found that the dictates of the Federal Aviation Act ("the Act") and the regulations enacted pursuant to it implied that Congress intended that the designation of landing sites for seaplanes is preempted by federal law. The district court found that former section 1508(a) of the Act stated: "The United States of America is hereby declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States...." Furthermore, the district court found that Congress expressly directed the formulation of comprehensive regulations governing aircraft operations pursuant to former sections 1348(a) & (c), and therefore, the ordinances at issue are preempted by federal law.
 
 
 21
 It is true that the Act indicates that the FAA has exclusive authority in regulating the airspace over the United States. Section 40103(b)(1) [former § 1348(a) ] reads in relevant part:
 
 
 22
 The Administrator of the Federal Aviation Administration shall develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace.
 
 
 23
 49 U.S.C. § 40103(b)(1) (emphasis added). Section 40103(b)(2) [former § 1348(c) ] provides as follows:
 
 
 24
 The Administrator shall prescribe air traffic regulations on the flight of aircraft (including regulations on safe altitudes) for--
 
 
 25
 (A) navigating, protecting, and identifying aircraft;
 
 
 26
 (B) protecting individuals and property on the ground;
 
 
 27
 (C) using the navigable airspace efficiently; and
 
 
 28
 (D) preventing collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects.
 
 
 29
 49 U.S.C. § 40103(b)(2) (emphasis added). However, we believe the United States' sovereign regulation of the airspace over the United States and the regulation of aircraft in flight is distinguishable from the regulation of the designation of plane landing sites, which involves local control of land (or, in the present case, water) use.
 
 
 30
 The district court's analysis that ordinances 66(E) and 25(J) are preempted by federal law relied heavily upon the Supreme Court's opinion in City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). In Burbank, the Supreme Court stated that in light of the pervasive nature of the scheme of federal regulation of aircraft noise, the FAA, in conjunction with the Environmental Protection Agency ("EPA"), has full control over aircraft noise, preempting state and local regulation. Id. at 638, 93 S.Ct. at 1862. Therefore, the Supreme Court held that the City of Burbank could not use municipal curfews to impose noise regulations on aircraft operations. In the present case, the district court relied on the Supreme Court's language in Burbank, which stated that the FAA has broad authority to regulate the use of the navigable airspace, in holding that the City's ordinances are preempted under the second prong of the preemption doctrine--pervasive federal regulation of the field.
 
 
 31
 We believe the district court read Burbank much too broadly in finding it to be dispositive in the present case. The district court failed to comprehensively examine the federal statutes and regulations pertaining to aircraft landing areas in order to glean the existence of preemptive pervasiveness, which is the proper approach established by the Supreme Court in Burbank. When the Court in Burbank turned to the FAA regulations to determine federal pervasiveness in the regulation of aircraft noise, it discovered: (1) the existence of express language in a Senate Report, which stated that "States and local governments are preempted from establishing or enforcing noise emission standards...."; (2) the existence of two agencies, the EPA and the FAA, with control over aircraft noise; and (3) the imposition of a variety of regulations governing noise by the Administrator of the FAA. Id. at 628-34, 93 S.Ct. at 1856-60. The Court in Burbank focused upon the fact that the Federal Aviation Act, the attendant regulations, the legislative history of the Act, the Noise Control Act, and the EPA clearly identified noise regulation as a field fully regulated by the federal government. The combination of these factors made it obvious that in regard to noise control, Congress intended to occupy the field of regulation. Id. at 638, 93 S.Ct. at 1862. Based on this evidence of pervasiveness, the Court in Burbank determined that aircraft noise was so comprehensively and strictly regulated by the federal government that it precluded enforcement of state or local laws on the same subject. Id. at 638-39, 93 S.Ct. at 1862-63.
 
 
 32
 In contrast, in the present case, an examination of the Federal Aviation Act and regulations concerning seaplanes and aircraft landing sites indicates that the designation of plane landing sites is not pervasively regulated by federal law, but instead is a matter left primarily to local control. In contrast to the pervasive scheme of federal regulation of aircraft noise found in Burbank, we fail to identify any language in the Act, the regulations promulgated pursuant to the Act, or the legislative history of the Act, which by implication preempts enforcement of the City's ordinances prohibiting the operation of seaplanes on Lake Angelus.
 
 
 33
 The applicable statutes and regulations indicate the following. In regard to federal preemption, the Act states:
 
 
 34
 (b) Preemption.--(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.
 
 
 35
 49 U.S.C. 41713(b)(1) [former § 1305(a)(1) ]. The plain language of 41713(b)(1) expressly prohibits States from regulating aviation rates, routes, or services, but the City of Lake Angelus ordinances do not infringe on these expressly preempted fields. The FAA has acknowledged that land use matters within the federal aviation framework are intrinsically local. For example, the regulation concerning the procedures governing the establishment of a civil airport indicates the following:[4]
 
 
 36
 FAA determinations.
 
 
 37
 (a) The FAA will conduct an aeronautical study of an airport proposal and, after consultations with interested persons, as appropriate, issue a determination to the proponent and advise those concerned of the FAA determination.... While determinations consider the effects of the proposed action on the safe and efficient use of airspace by aircraft and the safety of persons and property on the ground, the determinations are only advisory.... A determination does not relieve the proponent of responsibility for compliance with any local law, ordinance or regulation, or state or other Federal regulation. Aeronautical studies and determinations will not consider environmental or land use compatibility impacts.
 
 
 38
 14 C.F.R. § 157.7(a) (emphasis added). Clearly, the FAA defers to local zoning ordinances, since this regulation requires the establishment of an airport in compliance with a municipality's land use plan. As the regulation states, the proponent of the establishment of an airport must comply with any local law, ordinance or regulation.[5] Moreover, the regulation indicates that environmental impact and land use compatibility are matters of local concern and will not be determined by the FAA. Thus, in contrast to Burbank, in which the Supreme Court stated that the FAA made clear its intent to pervasively regulate aircraft noise, FAA regulation 14 C.F.R. § 157.7 indicates that the FAA does not intend to pervasively regulate the designation of the location of airports. We find no regulations governing the designation of the location of private airfields or seaplane landing sites. Under 14 C.F.R. § 157.7, the FAA recognizes that within the federal aviation framework, local zoning ordinances governing land use must be complied with. We believe this rationale applies in the present case, which concerns water use. Under the general provisions of the Act, an airplane landing area is defined as follows:
 
 
 39
 "landing area" means a place on land or water, including an airport or intermediate landing field, used, or intended to be used, for the takeoff and landing of aircraft, even when facilities are not provided for sheltering, servicing, or repairing aircraft, or for receiving or discharging passengers or cargo.
 
 
 40
 49 U.S.C. § 40102(28) [former § 1301(27) ] (emphasis added). Since a landing area includes a body of water, we find no merit to plaintiff's argument that "the inland waters," such as Lake Angelus, are part of the navigable airspace of the United States over which the federal government exerts preemptive control. The inland waters are part of the earth's surface, and water (as well as land) use compatibility are matters of local control.
 
 
 41
 The district court relied on two federal regulations concerning the operation of aircraft on the surface of the water to find pervasive preemption of the field. We disagree with the district court's analysis in this regard. 14 C.F.R. § 91.115(a) states:
 
 
 42
 Right-of-way rules: Water operations.
 
 
 43
 (a) General. Each person operating an aircraft on the water shall, insofar as possible, keep clear of all vessels and avoid impeding their navigation, and shall give way to any vessel or other aircraft that is given the right-of-way by any rule of this section.
 
 
 44
 This regulation pertains to the safe operation of seaplanes in order to avoid collisions and contains no specifications for seaplane landing sites. 14 C.F.R. § 91.119 states:
 
 Minimum safe altitudes: General
 
 45
 Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:
 
 
 46
 ....
 
 
 47
 (c) Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In those cases, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.
 
 
 48
 This regulation is also directed to the operational safety of seaplanes, not to the designation of landing areas or restrictions on access rights. We do not believe these two regulations pertaining to "right of way rules" and "minimum safe altitudes" illustrate an intent by Congress to pervasively regulate the field and to exert exclusive federal control over seaplane landing sites. To the contrary, there is no scheme of federal regulation designating locations for seaplane landings. The district court confused federal regulation of "the navigable airspace" and "the flight of aircraft" with regulation of use of the water surface itself, and erred in viewing the City's ordinances as pertaining to aircraft operations rather than to municipal water use. Because there is no pervasive, extensive, or complete federal regulatory scheme that controls seaplane landing sites, we find that no reasonable inference may be drawn under the second prong of the preemption doctrine that Congress left no room for the states or local governments to regulate in this area. See Hillsborough County, Florida, v. Automated Medical Labs., Inc., 471 U.S. 707, 719-20, 105 S.Ct. 2371, 2378-79, 85 L.Ed.2d 714 (1985).
 
 
 49
 Moreover, there is nothing in the City's ordinances which conflicts with or impedes the objectives of federal law under the third prong of the preemption doctrine. For example, the portion of ordinance 25(J) that prohibits "[t]he landing upon the lands, waters, or ice surface within the Village of Lake Angelus of any aircraft" does not make compliance with federal aviation law impossible or create obstacles to the attainment of federal goals. The pertinent language in the ordinances does not impinge upon the "exclusive sovereignty of airspace of the United States," 49 U.S.C. § 40103(a)(1) [former § 1508(a) ], nor does it interfere with the congressional mandate to insure the safety of aircraft and the efficient utilization of airspace pursuant to 49 U.S.C. § 40103(b)(2) [former § 1348(c) ]. Instead, the ordinances are limited to the regulation of the lake surface within the borders of the City, and there is no conflict with federal law. The prohibition against landing seaplanes on Lake Angelus does not inhibit in a proscribed fashion that which is preempted by federal law--the free transit of the navigable airspace--but instead restricts local water use, which is not preempted by federal law.
 
 
 50
 In several cases, the FAA has indicated that within the federal aviation framework, it does not concern itself with land or water use zoning issues. In Blue Sky Entertainment, Inc. v. Town of Gardiner, 711 F.Supp. 678, 683 (N.D.N.Y.1989), the FAA challenged portions of a local ordinance which attempted to regulate parachute jumping, aircraft operations, and aircraft noise, but the FAA specifically stated:
 
 
 51
 To the extent the ordinance regulates land use in the Town of Gardiner, it is not preempted by federal regulation of aviation.
 
 
 52
 In another case, Dallas/Fort Worth Int'l Airport Bd. v. City of Irving, 854 S.W.2d 161, 169 (Texas Ct.App.), vacated by, 868 S.W.2d 750 (Tex.1993), the FAA stated, "whether the airport is required to obtain a local permit [for an expansion project] is a matter of local law and is not relevant to the approval of the federal project."[6] In Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 197 (D.C.Cir.), cert. denied, 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991), the court upheld the municipal regulation of a heliport, pointing out that the FAA in an Environmental Impact Statement had written:
 
 
 53
 In the present system of federalism, the FAA does not determine where to build and develop civilian airports, as an owner/operator. Rather, the FAA facilitates airport development by providing Federal financial assistance, and reviews and approves or disapproves revisions to Airport Layout Plans at Federally funded airports.
 
 
 54
 The FAA has, thus, made clear that although FAA regulations preempt local law in regard to aircraft safety, the navigable airspace, and noise control, the FAA does not believe Congress expressly or impliedly meant to preempt regulation of local land or water use in regard to the location of airports or plane landing sites--whether for airplanes, helicopters or seaplanes. As a reviewing court, we must give great deference to the views of a federal agency with regard to the scope of its authority. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984).[7]
 
 
 55
 This limitation on the preemptive impact of the FAA is also found in the Supreme Court's opinion in Burbank. As Justice Rehnquist stated:
 
 
 56
 A local governing body that owns and operates an airport is certainly not, by the Court's opinion, prohibited from permanently closing down its facilities. A local governing body could likewise use its traditional police power to prevent the establishment of a new airport or the expansion of an existing one within its territorial jurisdiction by declining to grant the necessary zoning for such a facility.
 
 
 57
 411 U.S. at 653, 93 S.Ct. at 1869 (Rehnquist, J., dissenting). Justice Rehnquist pointed out that "while Congress clearly intended to pre-empt the states from regulating aircraft in flight, the author of the bill, Senator Monroney, specifically stated that the FAA would not have control 'over the ground space of airports.' " Id. at 644, 93 S.Ct. at 1865 (emphasis added). The majority in Burbank did not disagree with this conclusion and indicated that its holding was limited to regulation of aircraft noise. By analogy, we believe that if a local governing body may use its traditional police power to prevent the establishment of a new airport and control the ground space of airports, it may also prevent the landing of aircraft on specified bodies of water within its jurisdiction through its zoning authority, as the City of Lake Angelus has done in the present case.[8] A prohibition against landing on a body of water falls in the category of "control over ground space," which the legislative history of the Act indicates is a matter of local control, rather than in the category of the regulation of aircraft in flight, which is a matter of preemptive federal control. In reviewing an issue of preemption, this court must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless there [is a] clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). We find no purpose manifested in the Federal Aviation Act to preempt local law concerning the designation of landing sites for aircraft, including seaplanes. For this reason, we believe the district court erred in finding that Burbank was dispositive of the present case, which does not involve regulation of aircraft noise, but instead involves control of ground space, which has traditionally been the province of local governments. See Wright v. County of Winnebago, 73 Ill.App.3d 337, 29 Ill.Dec. 347, 391 N.E.2d 772 (1979) (in absence of any evidence of pervasive federal regulation, FAA does not preempt local government's power to restrict location of plane landing areas).
 
 
 58
 The district court also relied on Command Helicopters, Inc. v. City of Chicago, 691 F.Supp. 1148 (N.D.Ill.1988), in finding that the City's ordinances are preempted by federal law. In Command Helicopters, the court determined that because the FAA had prescribed a regulation governing external-load lifting operation of helicopters, a local ordinance involving a more stringent specification was preempted. We do not believe Command Helicopters is on point. The local ordinance in Command conflicted with an existing federal regulation, and the court found that a uniform and exclusive system of federal regulation governing helicopter external-load lifting operations was necessary for the congressional objectives of the FAA to be fulfilled. In contrast, in the present case, there is no federal regulation preventing seaplanes from landing on lakes with which the City's ordinances conflict, nor is there a need for nationwide uniformity in order for the objectives of the FAA to be fulfilled.
 
 
 59
 We believe the present case is analogous to Faux-Burhans v. County Commissioners of Frederick County, 674 F.Supp. 1172 (D.Md.1987), aff'd, 859 F.2d 149 (4th Cir.1988), cert. denied, 488 U.S. 1042, 109 S.Ct. 869, 102 L.Ed.2d 992 (1989), in which the owner of an airplane landing strip, who wanted to create a private airport, brought suit, challenging the county's zoning restrictions on airfield operations. The district court in Faux-Burhans found that the county zoning restrictions were not preempted by federal law and the Court of Appeals for the Fourth Circuit affirmed. The district court in Faux-Burhans examined the Supreme Court's opinion in Burbank and found it distinguishable. The court found that whereas the local noise regulations in question in Burbank clearly infringed upon federally preempted regulation of the navigable airspace, the plaintiff, Faux-Burhans, could point to no federal statute or regulation explicitly or implicitly preempting regulation of the size or scope of operations at a private airport (an airport not "otherwise open to air travel in general"). Id. at 1174. The court stated, "Certainly, these are all areas of valid local regulatory concern, none of which is federally preempted, and none of which inhibits in a proscribed fashion the free transit of navigable airspace. And just as certainly, no federal law gives a citizen the right to operate an airport free of local zoning control." Id.
 
 
 60
 We believe a similar rationale applies in the present case. Faux-Burhans involved use restrictions imposed on the creation of a private airport by local zoning ordinances. If a municipality, by zoning ordinances, may impose use restrictions on the creation of a private airport, we believe it may also impose use restrictions on a body of water within the municipality and prohibit the landing of seaplanes without being preempted by federal law. Just as the owner of an airplane does not have the authority to land wherever he chooses on land and must comply with local zoning ordinances, the owner of a seaplane does not have the authority to land a seaplane wherever he chooses.
 
 
 61
 Another case which is directly on point is Garden State Farms, Inc. v. Bay, 77 N.J. 439, 390 A.2d 1177 (1978). The plaintiff, a company seeking to establish and operate a landing area for helicopters, argued that the municipal ordinance prohibiting the creation and operation of a helistop was preempted by federal law. The court in Garden State Farms held that federal legislation has not preempted state and local jurisdiction with respect to the placement of private helistops. Id. at 446, 390 A.2d 1177. The court stated that the local regulation of small, relatively isolated, privately owned helistops did not present a situation where "preemption may be predicated upon a felt need for a monolithic system of regulation." Id. at 446-47, 390 A.2d 1177. The court explained:
 
 
 62
 [A]s a policy matter, if federal preemption were found, ... state and local governments, which are the only bodies that currently license privately operated helistops and heliports, would be shorn of this regulatory responsibility. Congress could not have intended to create a governmental vacuum with respect to privately operated helistops.
 
 
 63
 Id. at 449, 390 A.2d 1177.
 
 
 64
 Similar policy concerns are at issue in the present case. It is not feasible for Congress to determine how local land or bodies of water within a municipality are to be used in regard to the location of aircraft landing sites. The needs of a state such as Alaska, in which seaplanes play a vital commercial role, and Michigan, in which seaplanes are used primarily for recreation, are different, and this difference requires local, not national, regulation. The federal government, rather than "preempting the field," has not entered the field and exerts no control over the location of seaplane landing sites. If the federal government intended to preempt, we believe there would be a mass of regulations concerning seaplane landing sites, which simply do not exist. No federal statute or regulation addresses the action prohibited by the City of Lake Angelus ordinances or delineates the boundaries of local control in regard to seaplane landing sites. We find this absence of federal regulation significant. The Supreme Court, in Pacific Gas & Electric Co. v. State Energy Resources Conservation and Dev. Comm'n, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), stated that the Court must focus on whether the matter on which the local government asserts the right to act is in any way regulated by the federal Act and found that the only reasonable inference to be drawn from silence is that Congress intended local governments to continue to regulate. Id. at 208, 103 S.Ct. at 1724. If federal preemption were found in the present case, a "governmental vacuum" would occur because the federal government does not regulate the location of seaplane landing sites, and state and local governments would be shorn of their regulatory authority. See Garden State Farms, 77 N.J. at 449, 390 A.2d 1177. The result would be entirely impracticable, and every lake in the United States would become a potential airport for seaplanes. In regard to the location of commercial airports, the FAA has indicated that it will not adopt regulations controlling local land use, because the needs of each locality are unique and different. See 14 C.F.R. § 157.7. Courts have recognized that federal aviation law does not preempt local regulation of the location of airports or heliports, which must comply with local zoning ordinances. Just as Congress did not intend to create a regulatory vacuum with respect to the location of commercial or privately operated airports and heliports on land, we believe Congress did not intend to create a vacuum with respect to the location of seaplane landing sites on water, but left the matter to local control.
 
 
 65
 Finally, our conclusion that the Supreme Court's decision in Burbank does not preempt all state and local zoning power with respect to aircraft landing sites is supported by ample case law. See Condor Corp. v. City of St. Paul, 912 F.2d 215 (8th Cir.1990) (city's zoning ordinance prohibiting initial siting of heliport not preempted by federal law); San Diego Unified Port Dist. v. Gianturco, 651 F.2d 1306 (9th Cir.1981) (local governments' noise abatement plans that do not impinge on aircraft operations not preempted), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); City of Cleveland, Ohio v. City of Brook Park, Ohio, 893 F.Supp. 742 (N.D.Ohio 1995) (the FAA does not possess zoning authority merely by virtue of its broad mandate to regulate matters relating to aviation; state or local zoning or land use laws are not preempted); Wood v. City of Huntsville, 384 So.2d 1081 (Ala.1980) (although Congress has extensively and exclusively regulated use of the navigable airspace of the United States, state and local governments retain substantial control over ground usage); Bethman v. City of Ukiah, 216 Cal.App.3d 1395, 265 Cal.Rptr. 539 (1989) (no federal preemption of state or municipal regulation of the location and environmental impact of airports); Wright v. County of Winnebago, 73 Ill.App.3d at 344, 29 Ill.Dec. 347, 391 N.E.2d 772 (FAA does not preempt local zoning authority from determining appropriate use of land; the right not to have an airport in the first place is local); Harrison v. Schwartz, 319 Md. 360, 572 A.2d 528 (1990) (a zoning ordinance that does not regulate aircraft noise emissions or the actual conduct of flight operations may withstand a preemption argument), cert. denied, 498 U.S. 851, 111 S.Ct. 143, 112 L.Ed.2d 110 (1990); People v. Altman, 61 Misc.2d 4, 304 N.Y.S.2d 534, (N.Y.Dist.Ct.1969) (town ordinance prohibiting seaplanes from taking off or landing upon any portion of town's channel system except in an emergency is in harmony with federal law on the subject and is not preempted).
 
 
 66
 To conclude, there is a distinction between the regulation of the navigable airspace and the regulation of ground space to be used for aircraft landing sites. Although the regulation of the airspace of the United States has been preempted by Congress, we find Congress did not intend to preempt the regulation of water use in regard to aircraft landing sites as indicated by an examination of the Federal Aviation Act, the attendant regulations, the legislative history of the Act, and by statements made by the FAA itself. As the court in City of Cleveland stated:
 
 
 67
 The Aviation Act grants to the FAA authority to regulate the use of airspace, but this does not of necessity lead to the conclusion that localities are no longer free to regulate the use of land within their borders, even where land use regulations may have some tangential impact on the use of airspace.
 
 
 68
 893 F.Supp. at 751. Because the City of Lake Angelus could lawfully prohibit airplane and helicopter landings on city land under established case law, it logically follows that the City may also prohibit seaplane landings on Lake Angelus under its zoning authority. Federal preemption of the airspace under the Act does not limit the right of local governments to designate and regulate aircraft landing areas, including seaplane landings on lakes. Therefore, the Federal Aviation Act does not preempt City of Lake Angelus ordinances 25(J) and 66(E), which prohibit seaplanes from landing or operating on the surface of Lake Angelus. The district court is reversed on this issue.[9]
 
 III.
 
 69
 On cross-appeal, plaintiff alleges that as a riparian property owner and airman qualified to safely operate seaplanes, the ordinances at issue have deprived him of due process and equal protection in violation of the Fourteenth Amendment, and that the ordinances are exclusionary, arbitrary, capricious and not reasonably related to a legitimate government interest.
 
 
 70
 Under Michigan law, a party alleging exclusionary zoning must be prepared to establish both that the exclusion exists throughout the municipality and that there is a demonstrated need for the use he proposes. Fremont Tp. v. Greenfield, 132 Mich.App. 199, 204, 347 N.W.2d 204 (1984). The City of Lake Angelus is Michigan's smallest city by population and is an entirely residential community. The City argues that although plaintiff Gustafson wants to land seaplanes on Lake Angelus, he has not articulated any public need for such lake usage. The City also contends that a local legislative body's determination of the public interest and adoption of regulations which are rationally related to it must be deferred to. Pearson v. City of Grand Blanc, 961 F.2d 1211, 1223 (6th Cir.1992).
 
 
 71
 We agree with the City. As this court stated in Stupak--Thrall v. United States, 70 F.3d 881 (6th Cir.1995):
 
 
 72
 The Michigan Supreme Court has explicitly held that local governments may regulate their citizens' riparian rights pursuant to their inherent police powers. In Miller v. Fabius Township Board, 366 Mich. 250, 114 N.W.2d 205 (1962),the court allowed time restrictions on waterskiing. In Square Lake Hills Condo. Assn. v. Bloomfield Township, 437 Mich. 310, 471 N.W.2d 321 (1991), the court allowed regulation of boat docking and launching. In Square Lake Hills, especially, the court made it clear that plaintiffs' recreational riparian rights were subject to regulation for the protection of "health, safety, and welfare" of the general public. Id., 471 N.W.2d at 322.
 
 
 73
 Id. at 889. See also Hess v. West Bloomfield Twp., 439 Mich. 550, 486 N.W.2d 628 (1992) (a township has the authority to regulate riparian rights as part of its zoning power). Thus, Michigan law makes it clear that riparian rights are not absolute, but are subject to reasonable regulation, and municipalities can restrict boat usage by riparian owners. It follows by analogy that seaplane usage by riparian owners can also be restricted. The riparian rights asserted by plaintiff Gustafson are not absolutely protected by the Fourteenth Amendment, but instead are subject to reasonable regulation.
 
 
 74
 The test under Michigan law for determining whether an ordinance is reasonable requires an assessment of the existence of a rational relationship between the exercise of police power and the public health, safety, morals, or general welfare in a particular manner in a given case. Square Lake Hills Condo. Ass'n v. Bloomfield Township, 437 Mich. 310, 317, 471 N.W.2d 321 (1991). Moreover, as this court has stated in Pearson, where zoning legislation is subject to substantive due process attack, the scope of review by the federal court is even more deferential than for review of state administrative action. 961 F.2d at 1223. Although when reviewing administrative action, the federal court must make an extremely limited review of the evidence, when reviewing legislative acts, such as zoning ordinances, this is not permitted. The only permissible inquiry is whether the legislative action is rationally related to legitimate land use concerns. Id.
 
 
 75
 In the present case, we find that the City's concern with "noise,[10] danger, apprehension of danger, ... destruction of property values, and interference with other lawful uses of the lake enjoyed by the great majority of citizens, including boating, sailing, fishing, swimming, and other recreational uses" fulfills the requirements of this test. In Georgia Power Company v. Baker, 830 F.2d 163 (11th Cir.1987), the court upheld the right of a federally licensed power company to prohibit seaplanes from using its reservoirs, even though its license, issued by the Federal Energy Regulatory Commission, required that it permit the use of the reservoirs "for the purpose of full public utilization of such lands and water for navigation and for outdoor recreational purposes, including fishing and hunting." Id. at 164. The court noted that "Georgia Power's primary concern in prohibiting seaplanes was the safety of the boating public," id., and "[m]ore importantly, the company decided that seaplane operation on its reservoirs would present significant hazards both to the boating public and to seaplane pilots. Take-off and landing constitute a danger in themselves; and the exposed propeller of seaplanes poses an additional hazard to people on the lake as well as around docking facilities and boat ramps." Id. at 167. The court ruled that Georgia Power's prohibition of seaplanes on its reservoirs was a reasonable limitation. We find that for similar reasons, the City of Lake Angelus ordinances are reasonable limitations on the use of Lake Angelus and are rationally related to a legitimate government interest in safety.
 
 
 76
 In Appeal of Green and White Copter, Inc., 25 Pa.Cmwlth. 445, 360 A.2d 283 (1976), the court found that the township's total exclusion of heliports from residential areas was designed to protect the public interest. The court stated:
 
 
 77
 The potential safety problems and disturbances to the tranquility of the area are obvious. While air travel facilities are not nuisances per se, they may become nuisances in fact in a particular situation. Necessarily, the proposed use in this case would impinge upon the rights of neighboring landowners in the use and enjoyment of their property. If any further evidence of the potential for interference with adjoining property is required, it is provided by the fact that air flights over property have been found to constitute a taking of land near airports. See, e.g., Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962).
 
 
 78
 Id., 360 A.2d at 285.
 
 
 79
 We believe that similar legitimate concerns about the dangers inherent in the landing and taking off of seaplanes and the adverse effect on the "tranquility of the area" by low-level air traffic are found in the present case. The record does not disclose a basis on which to find that the City's prohibition against seaplane landings on Lake Angelus is arbitrary or unreasonable. Moreover, plaintiff has not been denied equal protection of the law, because all similarly situated persons, including all Lake Angelus residents, watercraft owners, and seaplane pilots are similarly regulated. See City of Shreveport v. Conrad, 212 La. 737, 744, 33 So.2d 503 (1947). The district court's denial of plaintiff's 42 U.S.C. § 1983 claim that the ordinances deprived him of his due process and equal protection rights under the Fourteenth Amendment is therefore affirmed.
 
 
 80
 In regard to attorneys fees, a claim premised on a violation of the Supremacy Clause through preemption is not cognizable under 42 U.S.C. § 1983. J. & J. Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1476-77 (10th Cir.1985). Since plaintiff's alleged violations of due process and equal protection are unmeritorious, the ordinances have not violated any civil right that is redressable under 42 U.S.C. § 1983, and the district court properly denied attorneys fees pursuant to 42 U.S.C. § 1988.
 
 IV.
 
 81
 To conclude, the district court is affirmed in part and reversed in part. The district court's grant of summary judgment to defendants in regard to plaintiff's 42 U.S.C. §§ 1983 and 1988 claims is AFFIRMED. The district court's decision in favor of plaintiff that ordinances 66(E) and 25(J) are preempted by federal law is REVERSED, and the case is remanded to the district court for proceedings consistent with this opinion. The Federal Aviation Act does not occupy the field of water use regulations in such a way as to preempt the City of Lake Angelus ordinances.
 
 
 82
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 83
 After numerous attempts at drafting a principled dissent to the majority opinion, I have come to the conclusion that while it is legally unassailable, the case nevertheless has an unsettling aspect. Due to the solid conclusion reached by Judge Contie for the majority, I concur in the judgment on both the preemption and section 1983 claims.
 
 
 84
 I write separately, however, to express a concern, even as I agree with the judgment. This case, I fear, may reenforce, as an unintended consequence, the moves to neutralize the appropriate exercise of federal power whenever state and local regulations are at play. History should remind us of the reasons why a strong central government has been deemed essential in our system of federalism.
 
 
 85
 I am simply not convinced that in this case the regulations cited by Gustafson demonstrate Congressional intent to preempt the local power to designate aircraft landing sites. To the contrary, zoning is one of the few spheres of control the Federal Aviation Act ("FAA") explicitly leaves to local governments. My concern is that some states and localities will use this ruling as a rallying point in their efforts to undermine particular areas of federal control. Far from that, this case must be read narrowly and as acknowledging that Congress excepted only limited areas from federal control when it enacted the FAA. As history has taught us, certain areas of regulation in our country must be left to the control of the national government. The very nature of some subjects implicate federal control. Air traffic must be regulated at the national level. Without uniform equipment specifications, takeoff and landing rules, and safety standards, it would be impossible to operate a national air transportation system.
 
 
 86
 City of Burbank v. Lockheed Air Terminal provides a telling example of a locality's attempt to undermine the reach of the Federal Aviation Act. In Burbank, one locality's curfew on jet aircraft landings threatened to disrupt flying schedules and jeopardize air safety throughout the entire nation. As the Court noted:
 
 
 87
 If we were to uphold the Burbank ordinance and a significant number of municipalities followed suit, it is obvious that fractionalized control of the timing of takeoffs and landings would severely limit the flexibility of FAA in controlling air traffic flow. The difficulties of scheduling flights to avoid congestion and the concomitant decrease in safety would be compounded.
 
 
 88
 Burbank, 411 U.S. at 639, 93 S.Ct. at 1862. I reiterate the Court's concern with local governments' ability to interfere with comprehensive federal regulatory programs. The line between permissible local regulation, such as the zoning regulation in this case, and impermissible encroachments on federal power in the name of zoning or other traditional state police power functions, such as protecting citizens health and welfare, is a thin line. Many localities are already eager to test the boundaries, and the courts must be ever mindful of their attempts to do so.
 
 
 89
 A recent federalism summit held in Cincinnati serves to remind us of those who wish to see power wrenched from the hands of the federal government. At the summit, state legislators, delegates, and observers from thirty-nine states and five nation-wide organizations convened to discuss proposals for "strengthening the states' hands in dealing with the federal government." See Dan Balz, Power Is on States' Agenda; Coalition Seeks to Fight Federal Encroachment on Sovereignty, Wash. Post, Oct. 25, 1995, at A17; Lawrence J. Goodrich, States Seek to Grab Even More Power from Washington, Christian Sci. Monitor, Oct. 25, 1995, at 1. Along with devising strategies to transfer certain areas under federal control to the states, conferees at this recent summit suggested proposals for interjecting state lawmakers into national rulemaking processes. Id. As this movement gains fervor, I grow more concerned that its proponents are overlooking this country's continued need for a strong national government.
 
 
 90
 In their charge to shift power from the national government to local governments, so-called states and local rights proponents cannot ignore the advancements in this country that could only have come about through the leadership of our national government. Besides creating an effective and intricate interstate travel system consisting of air, rail, water, and highway travel, our strong national government has shaped this country into a place where all citizens enjoy protections in the areas of voting rights, education, employment discrimination, labor, securities, and environmental protection. A collection of fifty separate governments could never have assured such protections throughout our fifty states.
 
 
 91
 Although a legal local seaplane landing prohibition may not seem much of a threat to the integrity of our national government, the possibility remains that the next local regulation may not be rooted in an appropriate exercise of local power. I caution that local governments ought to take care in regulating in areas that are subject to broad national control and to consider the advantages of our national government before attempting to undermine its authority.
 
 
 92
 BATCHELDER, Circuit Judge, concurring.
 
 
 93
 I write separately only to observe that Judge Jones's separate concurrence serves to remind us how very far we have strayed from the government described by its founders during this nation's birth.
 
 
 94
 The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite. The former will be exercised principally on external objects, as war, peace, negotiation, and foreign commerce; with which last the power of taxation will, for the most part, be connected. The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State.
 
 
 95
 THE FEDERALIST NO. 45, at 238 (James Madison) (G.W. Carey & J. McClellan eds., 1990).
 
 
 96
 If those who meet in the name of federalism seek, as Judge Jones puts it, "to see power wrenched from the hands of the federal government," to devise "strategies to transfer certain areas under federal control to the states," and "suggest[ ] proposals for interjecting state lawmakers into national rulemaking processes," they do so because the national government has usurped that power from the states and the people, to whom it was originally reserved. Compare U.S. CONST. art. I, § 8 with U.S. CONST. amend X.
 
 
 
 [1]
 The City of Lake Angelus's brief is supported on appeal by amici curiae, National Institute of Municipal Law Officers and Michigan Municipal League. Robert Gustafson's brief is supported on appeal by amicus curiae, Seaplane Pilots Association
 
 
 [2]
 When the suit was filed, ordinance 66 included an altitude regulation which prohibited flying over the City at altitudes less than 500 feet. Although the altitude regulation had never been enforced against plaintiff or anyone else, plaintiff Gustafson also challenged its validity. The City acknowledged that this provision was federally preempted and did not argue in support of its validity. The altitude regulation was subsequently deleted from ordinance 66 by amendment and is not at issue in this appeal
 
 
 [3]
 On July 5, 1994, Congress restated the laws related to transportation in one comprehensive title. The former Code sections are provided in brackets
 
 
 [4]
 Anyone proposing to establish a new airport is required to notify the Department of Transportation before any consideration or use begins. 14 C.F.R. § 157.3. In its review of an airport proposal, the FAA considers the following: the effects the proposed action would have on existing or contemplated traffic patterns of neighboring airports; the effects the proposed action would have on the existing airspace structure and projected programs of the FAA; and the effects that existing or proposed manmade objects (on file with the FAA) and natural objects within the affected area would have on the airport proposal. 14 C.F.R. § 157.7(a)
 
 
 [5]
 The definition of airport includes a "seaplane base." 14 C.F.R. § 157.2
 
 
 [6]
 Even though this case was vacated and remanded for reconsideration in light of a change in state law, the position the FAA took is instructive
 
 
 [7]
 We believe these cases contradict the statement of the court in Price v. Charter Township of Fenton, 909 F.Supp. 498 (E.D.Mich.1995), indicating that federal courts have found land use restrictions and zoning laws regarding prohibitions on the location of plane landing sites as violative of the Supremacy Clause. Id. at 502-04. We find Price distinguishable from the present case because the regulation at issue in Price concerned the frequency of flight operations at the plaintiff's airport, not whether an airport could be established in the first place. We do not believe the ordinances in the present case can be fairly construed as regulations of flight operation, because the FAA does not interpret the designation of the location of plane landing sites as such. As the court in Price indicated, if Fenton Township wanted "to prevent the construction of an airport that it felt would be disruptive to the surrounding area, it most likely could do so." Id
 
 
 [8]
 We believe it is appropriate to find that the landing of a seaplane on a lake, not officially designated as a landing area, is tantamount to, and can be reasonably construed as, the creation of an airport. Under FAA regulations, the broad definition of airport includes seaplane bases. 14 C.F.R. § 157.2
 
 
 [9]
 Plaintiff also argues that the ordinances are preempted by state law, relying on Mich.Comp.Laws Ann. § 281.1017 and the Michigan Aeronautics Code, Mich.Comp.Laws Ann. § 259.1 et seq. We disagree. There is nothing in these provisions to indicate the legislature's intent to take over a municipalities' responsibilities in the area of land or water use, development, or the location of aeronautical landing sites. See Garden State Farms, Inc., 77 N.J. at 445, 390 A.2d 1177 (although state aviation act embraced a comprehensive scheme of state regulation to promote safety and aeronautical progress, it did not preclude municipalities from determining whether or not aeronautical facilities should be constructed within their boundaries)
 
 
 [10]
 Plaintiff's argument that the ordinances are preempted because one of the rationales provided by the City for their enactment was the prevention of aircraft noise has no merit. As the court in Wright v. County of Winnebago, 73 Ill.App.3d at 344, 29 Ill.Dec. 347, 391 N.E.2d 772, pointed out, once an airport is operating, it may be that only the FAA can regulate the resulting noise problem, but the right to choose not to have an airport in the first place on the basis of aircraft noise is local and is not preempted