Andrew **BROADBENT**, and Rebecca Broadbent, Plaintiffs,

v.

Kenneth T. **ALLISON**; Willie T. Allison, and wife, Patricia M. Allison; and Transylvania County Airport, L.L.C., Defendants.

No. CIV. 1:01CV95.

United States District Court, W.D. North Carolina. Asheville Division.

Aug. 17, 2001.

James M. Kimzey, Brevard, NC, for Plaintiffs.

Michael C. Byrne, Law Offices of Michael C. Byrne, Brevard, NC, Ladson F. Hart, Brevard, NC, for Defendants.

## MEMORANDUM AND ORDER OF REMAND

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiffs' Motion to Remand. Defendants removed this action from Transylvania County, North Carolina, Superior Court, alleging that Plaintiffs' claims are preempted by Federal law and that this Court therefore has federal question jurisdiction. Because the Court concludes that Plaintiffs' claims are not completely preempted, Plaintiffs' motion to remand will be granted.

## I. FACTUAL BACKGROUND

The facts of this case are largely uncontested. In 1998, Defendants announced their intention to build an airport on a certain plot of land in rural Transylvania County. Complaint, ¶ 14. The site of the planned airport was directly adjacent to Plaintiffs' home, where they live and enjoy the hobby of horseback riding, replete with barn, riding ring, and other outbuildings located on their home site. *Id.* ¶¶ 10–11. Prior to construction, Plaintiffs informed Defendants of their concern that an airport would disturb their quality of life. *Id.* ¶ 15. Defendants assured Plaintiffs that they (Defendants) would take any necessary action to resolve problems that might arise. *Id.*

Since Defendants opened the airport for business, numerous aircraft have passed over Plaintiffs' property at a low altitude, and the number of flights are increasing. *Id.* ¶¶ 16–19. Plaintiffs complain that said aircraft cause harsh noise and vibration making conversation impossible on their property. *Id.* ¶ 21. Additionally, Plaintiffs allege that flights landing and taking off from the airport frighten their animals to such a degree that they react abruptly and violently to the flights. *Id.* ¶ 29.

Plaintiffs filed suit in state court, alleging state law causes of action based on nuisance and intentional or willful misconduct. Plaintiffs seek actual and punitive damages and permanent injunctive relief barring all flights to and from the airport. Defendants removed this action to federal court pursuant to 28 U.S.C. § 1441(b) (removal), invoking this Court's purported jurisdiction over matters arising under federal law, 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

The burden of establishing federal jurisdiction is placed upon the party seeking removal. Because removal jurisdiction raises significant federalism concerns, [federal courts] must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary. *Mulcahey v. Columbia Organic Chemicals, Co., Inc.*, 29 F.3d 148, 151 (4th Cir.

1994) (internal citations omitted). In practice this means that "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999) (internal quotations and citation omitted).

## III. DISCUSSION

■ In order to determine if an action arises under federal law, [federal courts] apply the well-pleaded complaint rule. This rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. Because the well-pleaded complaint rule applies to the original jurisdiction of the district courts as well as the their removal jurisdiction, a plaintiff may avoid federal jurisdiction by exclusive reliance on state law in pleading its case.

*Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225, 231 (4th Cir.1993) (internal quotations and citations omitted). Because federal preemption is a defense to an action, it does not appear on the face of the complaint and therefore generally does not authorize removal to federal court. *See id.* This is so "even if both parties agree that the only issue for decision in a case is the validity of a federal preemption defense[.]" *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir.1996) (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

■ However, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise Tax Bd.*, 463 U.S. at 22, 103 S.Ct. 2841.

If a court concludes that a plaintiff has "artfully pleaded" claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim.... [O]nce an area of state law has been completely preempted, any claim purportedly based on that preempted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law.

*Rivet v. Regions Bank of La.*, 522 U.S. 470, 475–76, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (internal quotations and citations omitted); *see Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 772 (4th Cir.1998).

■ In deciding whether a particular cause of action is completely preempted by federal law, district courts must be mindful that, "although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitantly and displays no enthusiasm to extend the doctrine into areas of law beyond the [Labor Management Relations Act ("LMRA") and Employee Retirement Income Security Act ("ERISA") ]." *Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 856 (11th Cir.1999). District courts making this determination should consider "whether: (1) the rights underlying the state cause of action are equivalent to the exclusive rights granted under a federal statute, and (2) the statutory language and legislative history evinces Congress's intent that litigation to protect the federal rights occur in federal courts." *Id.* (citing *Rosciszewski*, 1 F.3d at 229–33). "The complete preemption analysis thus focuses primarily upon evaluating Congress's intent, which is the "touchstone" of federal court removal jurisdiction." *Id.* at 857 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)); *Rosciszewski*, 1 F.3d at 231. In short, there must be "a clearly manifested congressional intent to make

state claims removable to federal court." *Anderson v. American Airlines, Inc.,* 2 F.3d 590, 598 (5th Cir.1993) (quotation and citation omitted).

Defendants' argument in support of complete preemption is straightforward. As Defendants correctly note, Section 40103 of the Federal Aviation Act states unambiguously that "[t]he United States government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). Navigable airspace is defined as "airspace above the minimum altitude of flight ... including airspace needed to ensure the safety in the takeoff and landing of aircraft." 49 U.S.C. § 40102(a)(30). Plaintiffs' attempt to "bar any takeoffs and landings[,]" the argument goes, "thus involv[es] regulation of 'navigable airspace' ... [which is] under the *exclusive* authority of the FAA Administrator." Defendants' Memorandum in Support of Motion for Partial Judgment on the Pleadings, at 4 (emphasis original). Defendants argue that Plaintiffs' attempt to "prohibit all flights from the Airport" intrudes on the FAA's sole authority to regulate "safe altitudes for flying" and therefore is preempted by federal law. *Id.* at 8.

In support of their argument for complete preemption Defendants cite *Vorhees v. Naper Aero Club,* 96 F.Supp.2d 820, 823 (N.D.Ill.2000), which they characterize as the "deathblow to Plaintiffs' injunctive claims." *Id.* at 6–7. In *Vorhees,* the plaintiff sought to enjoin a private airport from using one of its two runways. 96 F.Supp.2d at 821. The *Vorhees* court understood plaintiff's complaint to concern the particular flight patterns of planes taking off from the northern runway which, in conjunction with a state law prohibiting the construction of any structure which would obstruct a landing area or residential airport, effectively prevented him from erecting com-

mercial or residential structures on that portion of his land which directly abutted the northern runway. *Id.* at 822–23. According to the court, such an injunction "would require the defendants to change their routes and flight patterns and would, ultimately, result in the regulation of air traffic to and from the airport and its runways." *Id.* at 823. "Such regulation of the pattern and flights of aircraft[,]" said the court, "is solely within the sovereignty of the federal government." *Id.* According to the court, "it is the airspace above the farm which is the focus of this litigation[-] [which] airspace is necessary for the safe take-offs and landings at the airport and, thus, falls under the FAA's definition of navigable airspace." *Id.* (citation omitted).

The case *sub judice* is fundamentally different from *Vorhees,* in that Plaintiffs seek to close down the entire airport rather than merely shift the direction of take-offs and landings. Plaintiff Vorhees did not challenge the location of the airport itself, only the takeoff and landing trajectory and altitudes. *See Vorhees,* 96 F.Supp.2d at 821–23. Thus, the *Vorhees* court was correct in characterizing that lawsuit as one involving the direct regulation of airspace and flight patterns, which comes under the exclusive control of the FAA. Here, though, Plaintiffs challenge the propriety of establishing an airport at the location chosen by Defendants, rather than quibbling with the particular directions and flight patterns of planes using that airport. *Cf. id.* at 823 (distinguishing cases which involved prohibiting all take-offs and landings at a particular location from the facts in *Vorhees:* "In the present case, plaintiff is seeking to enjoin an airport from using its already zoned runway—a runway which is protected by a state statute." (citation omitted)). Hence, the instant claim is best understood to be one concerning land use issues, rather than the regulation of airspace. *See City of Cleveland v. City of Brook Park,* 893

F.Supp. 742, 750–51 (N.D.Ohio 1995) (distinguishing between the "direct regulation of aircraft flight operations and regulation of land use").

As the Sixth Circuit recognized in *Gustafson v. City of Lake Angelus*, 76 F.3d 778 (1996), deciding whether to allow planes to land and takeoff from a certain location is a quintessential land use issue over which state and local governments possess near-plenary authority. Deciding that the Federal Aviation Act does not "preempt the right of local government to designate and regulate aircraft landing areas," the court distinguished between the "United States' sovereign regulation of the airspace over the United States and the regulation of aircraft in flight" and the fundamentally different "regulation of the designation of plane landing sites, which involves local control of land . . . use." *Id.* at 783. Focusing its inquiry on congressional intent, the Sixth Circuit noted that while the Congress clearly expressed its intent to preempt and "prohibit States from regulating aviation rates, routes, or services," land use decisions of the instant character "do not infringe on these expressly preempted fields." *Id.* at 784.

Moreover, the court noted, FAA regulations concerning the establishment of civil airports state:

*A determination does not relieve the proponent of responsibility for compliance with any local law, ordinance or regulation, or state or other Federal regulation. Aeronautical studies and determinations will not consider environmental or land use compatibility impacts.*

*Id.* at 785 (quoting 14 C.F.R. § 157.7(a) (emphasis added)). This determination of the scope of the FAA's own authority is entitled to great deference by federal courts. *Id.* at 786 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778,

81 L.Ed.2d 694 (1984)). "Thus, in contrast to [*City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) ], in which the Supreme Court stated that the FAA made clear its intent to pervasively regulate aircraft noise, FAA regulation 14 C.F.R. § 157.7 indicates that the FAA does not intend to pervasively regulate the designation of the location of airports." *Id.* at 785. Finding "no [federal] regulations governing the designation of the location of private airfields[,]" the court concluded that the Federal Aviation Act does not preempt state or local land use laws. *Id.; accord Condor Corp. v. City of St. Paul*, 912 F.2d 215, 219 (8th Cir.1990) ("We see no conflict between a city's regulatory power over land use, and the federal regulation of airspace, and have found no case recognizing a conflict."); *Faux–Burhans v. County Comm'rs of Frederick County*, 674 F.Supp. 1172, 1174 (D.Md.1987), *aff'd*, 859 F.2d 149, 1988 WL 97345 (4th Cir.1988) ("[N]o federal law gives a citizen the right to operate an airport free of local zoning control."); *In re Commercial Airfield*, 752 A.2d 13, 15 (Vt.2000) (federal government "has not preempted land uses issues"); *Tanis v. Township of Hampton*, 306 N.J.Super. 588, 704 A.2d 62 (App.Div.1997) ("state and local governments control the establishment of new airports or landing strips"). The Court finds this reasoning persuasive, and, therefore, will remand this action to the proper state forum.

The fact that an individual, rather than a political entity, seeks to prevent the establishment of an airport at a given location does not change the Court's analysis. The complete preemption doctrine focuses on whether the Congress intended to make state claims removable to federal court, or to prohibit them altogether. Once Congress has completely preempted a particular field ("occupation of the field"), it makes no difference whether it is a state, municipality, or individual who attempts to

compel a course of action by litigating in state court, for that avenue of relief has been foreclosed to all. Where, as here, an act of Congress does not completely preempt state law, individuals and government entities alike may pursue state law causes of action in state court.

A finding that the Federal Aviation Act does not completely preempt state law causes of action does not require this Court to reach the merits of this case. The Court has not considered and expresses no view on whether injunctive relief or damages are available to Plaintiffs; that is a question of state law properly decided by a state court.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiffs' motion to remand is **GRANTED** and this action is hereby **REMANDED** to the General Court of Justice, Superior Court Division of Transylvania County, North Carolina.

**IT IS FURTHER ORDERED** that all other pending motions in this case are **DENIED** as moot.